UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH HEBERT, individually and on behalf of all others similarly situated, | § § § | Docket No. _____ |
| Plaintiffs, | § § § | |
| v. | § § | JURY TRIAL DEMANDED |
| CHESAPEAKE ENERGY CORPORATION, INC. AND CHESAPEAKE ENERGY MARKETING, LLC | § § § § § | CLASS/COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)/ FED. R. CIV. P. 23 |
| Defendants. | § § | |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**I.   SUMMARY**

1. Joseph Hebert ("Hebert") ("Hebert" or "Plaintiff") brings this lawsuit to recover unpaid overtime wages and other damages from Chesapeake Energy Corporation, Inc. and Chesapeake Energy Marketing, LLC (collectively "Chesapeake") under the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act, O.R.C. §§4111 *et seq.*, ("the Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA"), and Ohio Rev. Code §4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts").

2. Hebert worked for Chesapeake as a consultant/company man.

3. Hebert and the other workers like them regularly worked for Chesapeake in excess of forty (40) hours each week.

4. But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

5. Instead of paying overtime as required by the FLSA and Ohio Wage Acts, Chesapeake improperly classified Hebert and those similarly situated workers as independent

contractors and paid them a daily rate with no overtime compensation.

6. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## II. JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

10. Hebert performed work for Chesapeake in Cadiz, Ohio (Harrison County) in this District and Division and Chesapeake conducts substantial business operations in this District and Division.

## III. THE PARTIES

11. Hebert worked for Chesapeake as a company man from approximately January 2014 until January 2016.

12. Throughout his employment with Chesapeake, Hebert was paid a day-rate with no overtime compensation and was classified as an independent contractor.

13. Hebert's consent to be a party plaintiff is attached as Exhibit A.

14. Hebert brings this action on behalf of themselves and all other similarly situated workers who were classified as independent contractors and paid by Chesapeake's day-rate system. Chesapeake paid each of these workers a flat amount for each day worked and failed to pay them

overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA and Ohio Wage Acts.

15. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **ALL CURRENT AND FORMER WORKERS OF CHESAPEAKE ENERGY CORPORATION WHO WERE CLASSIFIED AS INDEPENDENT CONTRACTORS AND PAID A DAY-RATE DURING THE LAST THREE (3) YEARS. (**"Putative Class Members")

16. Hebert seeks class certification of such a class under FED. R. CIV. P. 23 under the Ohio Wage Acts.

17. Defendant **Chesapeake Energy Corporation,** is an Oklahoma corporation doing business throughout the United States, including Ohio. Chesapeake may be served by serving its registered agent for service of process, **The Corporation Company, 1833 S. Morgan Rd, Oklahoma City, OK, 73128**.

18. Defendant **Chesapeake Energy Marketing, LLC**, is an Oklahoma corporation doing business throughout the United States, including Ohio. Chesapeake may be served by serving its registered agent for service of process, **CT Corporation System, 4400 Eastern Commons Way, Suite 125, Columbus, Ohio 43219**.

## IV. COVERAGE UNDER THE FLSA

19. At all times hereinafter mentioned, Chesapeake has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all times hereinafter mentioned, Chesapeake has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. At all times hereinafter mentioned, Chesapeake has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section

3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce by any person and in that Chesapeake has had and have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

22. At all times hereinafter mentioned, Hebert and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

23. As will be shown through this litigation, Chesapeake treated Hebert (and indeed all of its workers that it classified as independent contractors and paid a daily rate to without overtime compensation) as employees and uniformly dictated the pay practices of Hebert and its other workers including its so-called "independent contractors."

24. Chesapeake's misclassification of Hebert and these workers as independent contractors does not alter their status as employees for purposes of the FLSA or the Ohio Wage Acts.

## V. FACTS

25. Chesapeake is an American petroleum and natural gas exploration and production company. Its operations are focused on discovering and developing its large and geographically diverse resource base of unconventional oil and natural gas assets onshore in the United States. Chesapeake Energy, *Corporate Fact Sheet*, http://www.chk.com/documents/operations/corporate-fact-sheet.pdf (March 2017). The company also owns oil and natural gas marketing and natural gas gathering and compression businesses. *Id.* It operates throughout the United States, including Ohio's Utica Shale, one Chesapeake's biggest growth areas. Operations, Ohio Overview,

4

http://www.chk.com/operations#/ohio (last visited September 26, 2017). To complete their business objectives, Chesapeake hires consultants to perform work on various oil and gas sites.

26. Many of these individuals worked for Chesapeake on a day-rate basis, were misclassified as independent contractors, and make up the proposed Putative Class. While exact job titles and job duties may differ, these workers are subjected to the same or similar illegal pay practices for similar work.

27. Chesapeake classified all these consultants as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

28. For example, Hebert worked for Chesapeake as a company man from approximately January 2014 until January 2016. Throughout his employment with Chesapeake, he was classified as an independent contractor and paid on a day-rate basis.

29. As consultants, Hebert's primary job duties included monitoring drilling operation and activities at jobsites and operating oilfield equipment. Hebert worked in excess of 40 hours most, if not all weeks, while employed by Chesapeake, often for weeks at time.

30. The work Hebert performed was an essential and integral part of Chesapeake's core business.

31. During Hebert's employment with Chesapeake while he was classified as an independent contractor, Chesapeake exercised control over all aspects of his job.

32. Chesapeake did not require any substantial investment by Hebert for him to perform the work required of him.

33. Chesapeake determined Hebert's opportunity for profit and loss. Hebert was not required to possess any unique or specialized skillset (other than that maintained by all other employees in their respective position) to perform his job duties.

34. Chesapeake and its clients controlled all the significant or meaningful aspects of the job duties performed by Hebert.

35. Chesapeake and its clients determined the hours and locations Hebert worked, tools used, and rates of pay received.

36. Even though Hebert often worked away from Chesapeake's offices without the presence of a direct supervisor employed by Chesapeake; Chesapeake still controlled all aspects of Hebert's job activities by enforcing mandatory compliance with Chesapeake and its client's policies and procedures.

37. No real investment was required of Hebert to perform his job.

38. More often than not, Hebert utilized equipment provided by Chesapeake and/or its clients to perform their job duties. Hebert did not provide the equipment he worked with on a daily basis. Additionally, Hebert resided on the job site provided by Chesapeake.

39. Chesapeake and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Hebert worked.

40. Hebert did not incur operating expenses like rent, payroll, marketing, and insurance.

41. Hebert was economically dependent on Chesapeake during their employment.

42. Chesapeake set Hebert's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Chesapeake.

43. Chesapeake directly determined Hebert's opportunity for profit and loss. Hebert's earning opportunities were based on the number of days Chesapeake scheduled him to work.

44. Very little skill, training, or initiative was required of Hebert to perform his job duties. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Chesapeake and/or its clients. Virtually every job function was pre-determined by Chesapeake and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. Hebert and the Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

45. Moreover, the job functions of Heber and the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

46. Hebert and the Putative Class Members did not have any workers who reported directly to them. Additionally, Hebert and the Putative Class Members did not have the ability to hire or fire any other workers.

47. Hebert was not employed by Chesapeake on a project-by-project basis. In fact, while Hebert was classified as an independent contractor, he was regularly on call for Chesapeake and/or its clients and was expected to drop everything and work whenever needed.

48. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

49. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

50. Chesapeake's policy of failing to pay their independent contractors, including Hebert, overtime violates the FLSA and Ohio Wage Acts because these workers are, for all purposes, employees performing non-exempt job duties.

51. It is undisputed that the contractors are operating oilfield machinery, performing manual labor, and working long hours out in the field.

52. Because Hebert (and Chesapeake's other independent contractors) was misclassified as an independent contractor by Chesapeake, he should receive overtime for all hours that they worked in excess of 40 hours in each workweek.

53. Chesapeake's day-rate system violates the FLSA and Ohio Wage Acts because Hebert and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

## VI. FLSA VIOLATIONS

54. As set forth herein, Chesapeake has violated, and are violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

55. Chesapeake knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Chesapeake's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

56. Accordingly, Hebert and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## VII. OHIO WAGE ACT VIOLATIONS

57. Hebert brings this claim under the Ohio Wage Act as a Rule 23 class action.

58. The conduct alleged violates the Ohio Wage Act (O.R.C. §§4111).

59. At all relevant times, Chesapeake was and is subject to the requirements of the Ohio Wage Act.

60. At all relevant times, Chesapeake employed Hebert and each Class Member with Ohio state law claims as an "employee" within the meaning of the Ohio Wage Act.

61. The Ohio Wage Act requires employers like Chesapeake to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Hebert and each member of the Ohio Wage Act Class are entitled to overtime pay under the Ohio Wage Acts.

62. Chesapeake had a policy and practice of misclassifying Hebert and each member of the Ohio Wage Act class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

63. Hebert and each member of the Ohio Wage Act Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

64. Hebert and each member of the Ohio Wage Act Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Chesapeake, as provided by the Ohio Wage Act.

### VIII. CLASS AND COLLECTIVE ACTION ALLEGATIONS

65. Hebert incorporates all previous paragraphs and alleges that the illegal pay practices Chesapeake imposed on Hebert was likewise imposed on the Putative Class Members.

66. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and Ohio Wage Acts.

67. Numerous other individuals who worked with Hebert indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

68. Based on their experiences and tenure with Chesapeake, Hebert is aware that Chesapeake's illegal practices were imposed on the Putative Class Members.

69. The Putative Class Members were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

70. Chesapeake's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

71. Hebert's experiences are therefore typical of the experiences of the Putative Class Members.

72. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

73. Hebert has no interests contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Hebert has an interest in obtaining the unpaid overtime wages owed to them under state and/or federal law.

74. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

75. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Chesapeake will reap the unjust benefits of violating the FLSA and applicable state labor laws.

76. Furthermore, even if some of the Putative Class Members could afford individual litigation against Chesapeake, it would be unduly burdensome to the judicial system.

77. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

78. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether Chesapeake employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA and Ohio Wage Acts;

    b. Whether the Putative Class Members were improperly misclassified as independent contractors;

    c. Whether Chesapeake's decision to classify the Putative Class Members as independent contractors was made in good faith;

    d. Whether Chesapeake's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

    e. Whether Chesapeake's violation of the FLSA and Ohio Wage Acts was willful; and

    f. Whether Chesapeake's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

79. Hebert's claims are typical of the claims of the Putative Class Members. Hebert and the Putative Class Members sustained damages arising out of Chesapeake's illegal and uniform employment policy.

80. Hebert knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

81. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

### IX. JURY DEMAND

82. Hebert demands a trial by jury.

### X. RELIEF SOUGHT

83. WHEREFORE, Hebert pray for judgment against Chesapeake as follows:

   a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order pursuant to Section 16(b) of the FLSA finding Chesapeake liable for unpaid back wages due to Hebert and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

   c. For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

   d. For an Order appointing Hebert and his counsel as Class Counsel to represent the interests of the both the federal and state law classes;

   e. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

f.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Robert E. DeRose*
Robert E. DeRose, OH Bar No. 0055214
**BARKAN MEIZLISH HANDELMAN GOODWIN DEROSE WENTZ, LLP**
250 E. Broad Street, 10th Floor
Columbus, OH 43215
614-221-4221 – Telephone
614-744-2300 - Facsimile
bderose@barkanmeizlish.com

*Local Counsel for Plaintiff*

**AND**

Michael A. Josephson
Texas Bar No. 24014780
*(Pending Pro Hac Vice)*
Richard M. Schreiber
Texas Bar No. 24056278
*(Pending Pro Hac Vice)*
Andrew W. Dunlap
Texas Bar No. 24078444
*(Pending Pro Hac Vice)*
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
rschreiber@mybackwages.com
adunlap@mybackwages.com

13

        **AND**

        Richard J. (Rex) Burch
        Texas Bar No. 24001807
        **BRUCKNER BURCH, P.L.L.C.**
        8 Greenway Plaza, Suite 1500
        Houston, Texas 77046
        713-877-8788 – Telephone
        713-877-8065 – Facsimile
        rburch@brucknerburch.com

        **ATTORNEYS IN CHARGE FOR PLAINTIFF**