# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH HEBERT, individually and on behalf of all others similarly situated,<br><br>v.<br><br>CHESAPEAKE OPERATING, INC. & CHESAPEAKE OPERATING, LLC | **Docket No. 2:17-cv-00852-SDM-KAJ**<br><br>Judge Sarah D. Morrison<br><br>Magistrate Kimberly A. Jolson |

## PLAINTIFF'S SUPPLEMENT TO THE JOINT MOTION TO APPROVE FLSA SETTLEMENT

Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
Richard M. Schreiber
Texas Bar No. 24056278
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Robert E. DeRose
OH Bar No. 0055214
**BARKAN MEIZLISH HANDELMAN GOODWIN DEROSE WENTZ, LLP**
250 E. Broad Street, 10th Floor
Columbus, OH 43215
614-221-4221 – Telephone
614-744-2300 – Facsimile
bderose@barkanmeizlish.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**

# TABLE OF CONTENTS

I. INTRODUCTION. ...........................................................................................................................1

II. THE AGREED UPON FEE IS CONSISTENT WITH THE MARKET, PRECEDENT, AND THE
    QUALITY OF THE SETTLEMENT. ................................................................................................2

    A. The Agreed Upon Contingent Fee is Consistent with Market Rates. .................................2

    B. The Agreed Upon Fee is Consistent with Precedent. ............................................................3

    C. The Settlement Protects Class Members Who Wish to Participate
       (and Those Who Don't). ..............................................................................................................5

III. REDUCING THE NEGOTIATED FEE WOULD NOT BENEFIT ANYONE OTHER THAN
     CHESAPEAKE. ................................................................................................................................7

IV. CONCLUSION. ............................................................................................................................8

**Cases**

*Barbee v. Big River Steel, LLC*,
   927 F.3d 1024 (8th Cir. 2019) ................................................................................................1
*Barnes v. Winking Lizard, Inc.*,
   No. 1:18CV952, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) ...........................................4
*Besic v. Byline Bank, Inc.*,
   No. 16 C 8003, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015) ............................................ 6, 7
*Brite v. Great Plains Analytical Services, Inc.*,
   No. 7:18-cv-00153, at ECF No. 24 (W.D. Tex. Feb. 12, 2019) .............................................4
*Brittmon v. Upreach LLC*,
   No. 2:17-CV-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018) ...........................................4
*Cerrato v. Durham Pub. Sch. Bd. of Educ.*,
   No. 1:16CV1431, 2017 WL 2983301 (M.D.N.C. Mar. 17, 2017) .........................................5
*Comeaux v. Quality Energy Svcs., Inc.*,
   No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) ....................................4
*Connectivity Sys. Inc. v. Nat'l City Bank*,
   No. 2:08-CV-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ..........................................3
*Edelen v. Am. Residential Servs.*,
   Civ. A. No. DKC-11-2744, 2013 WL 3816986 (D. Md. July 22, 2013) ...............................6
*Furman v. At Home Stores, LLC*,
   No. 1:16-cv-08190, Doc. 30 (N.D. Ill. May 1, 2017) .............................................................6
*Hall, et al. v. U.S. Cargo and Courier Service, LLC*,
   2:16-cv-330-EAS-EPD (USDC, S.D. Ohio, 2016) ................................................................2
*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...............................................................................................................1
*In re Broadwing, Inc. ERISA Litig.*,
   252 F.R.D. 369 (S.D. Ohio 2006) ..........................................................................................5
*In re S. Ohio Corr. Facility*,
   173 F.R.D. 205 (S.D. Ohio 1997) ..........................................................................................5
*In re Telectronics Pacing Sys., Inc.*,
   137 F.Supp.2d 1029 (S.D. Ohio 2001) ..................................................................................5
*Jones v. Bison Drilling and Field Services, LLC*,
   No. 7:17-cv-00167, at ECF Nos. 32 & 35 (W.D. Tex. Feb. 2019) ........................................4
*Kritzer v. Safelite Sols., LLC*,
   No. 2:10-CV-0729, 2012 WL 1945144 (S.D. Ohio May 30, 2012) .......................................4
*Legros v. Mud Control Equip., Co.*,
   No. 15-1082, 2017 WL 925730 (W.D. La. Mar. 6, 2017) .....................................................4
*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010) ..................................................................................3
*Matthews v. Priority Energy Servs., LLC*,
   No. 6:15CV448, 2018 WL 1939327 (E.D. Tex. Apr. 20, 2018) ............................................4
*Ortiz v. Chop't Creative Salad Co. LLC*,
   No. 13 Civ. 2541(KNF), 2014 WL 1378922 (S.D.N.Y. Mar. 25, 2014) ...............................6

*Salinas v. U.S. Xpress Enterprises, Inc.*,
   No. 113CV00245TRMSKL, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) ........................................ 4
*Sarabia v. Spitzer Industries, Inc.*,
   No. 4:17-cv-02092, at ECF No. 32 (S.D. Tex. May 24, 2018) .................................................... 4
*Seghroughni v. Advantus Rest., Inc.*,
   No. 8:12-cv-2000-T-23TBM, 2015 WL 390329 ...................................................................... 6
*Vela v. City of Houston*,
   276 F.3d 659 (5th Cir. 2001) ................................................................................................. 1, 2
*Warren v. Cook Sales, Inc.*,
   No. CV 15-0603-WS-M, 2017 WL 325829 (S.D. Ala. Jan. 23, 2017) ........................................ 7, 8
*Whitaker v. BHP Billiton Petroleum (Americas) Inc.*,
   No. 4:17-cv-02698, at ECF No. 30 (S.D. Tex. Aug. 7, 2019) ..................................................... 3
*Whitlow v. Crescent Consulting, LLC*,
   No. 5:16-cv-01330, at ECF No. 189 (W.D. Okla. April 1, 2019) ................................................ 4
*Winingear v. City of Norfolk, Va.*,
   No. 2:12CV560, 2014 WL 3500996 (E.D. Va. July 14, 2014) ..................................................... 4

## **Other Authorities**

Hybrid Class Action, Dual Certification, and Wage Law Enforcement in the Federal Courts,

   29 Berkeley J. Emp. & Lab. L. 269 (2008) ............................................................................... 7

Manual for Complex Litigation § 21.66 (4th ed.) ........................................................................ 5

**I.     INTRODUCTION.**

Hebert agreed to a 40% contingency fee when he hired Plaintiffs' Counsel.[1] This percentage is customary in wage and hour litigation. *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (noting the "customary contingency" in wage and hour litigation is "35 to 40 percent"). Chesapeake, a Fortune 500 company represented by the nation's largest management side law firm, agreed to pay a 40% fee in addition to the amounts being offered to the Settlement Class Members. Because this in an "opt-in" settlement, only those who are ok with the terms they are being offered will be bound by it. Unlike a Rule 23 "opt-out" settlement, no-one can lose any rights without their affirmative consent. Anyone who disagrees with the settlement's terms (including the fee provision) is free to proceed with their claims with the counsel of their choice (on whatever terms they negotiate).

The money from a fee reduction would go to Chesapeake, not the Settlement Class Members. Thus, altering the agreed upon terms of the Settlement by reducing the agreed upon fee would give Chesapeake a retroactive discount it did not bargain for, presumably on behalf of workers who will receive no benefit from it (and are not asking for it). And while the Court obviously has an important role in assuring the settlement is fair to the Settlement Class Members, it simply isn't the Court job to protect Chesapeake.

Supreme Court precedent not only permits but endorses settlement of attorney's fees in aggregate litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Recent FLSA authority suggests that when they do under circumstances that exist here, that should end the matter. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("parties [are] entitled to settle the attorney fee issue, and no law g[ives a] district court authority to interfere with that unconditional right"). The parties reached the agreed upon fee after reaching a

---

[1] Technically, Hebert agreed to pay a 40% contingency fee plus litigation expenses and costs, but Plaintiffs' counsel agreed to waive recovery of these expenses and costs from the plaintiffs' share.

settlement that dwarfs the average overtime settlement, ensures class members who decide to accept it will be paid promptly (indeed, immediately), and does not require those who wish to retain their claims to do anything. To the extent approval is necessary, it should be given here.

## II. THE AGREED UPON FEE IS CONSISTENT WITH THE MARKET, PRECEDENT, AND THE QUALITY OF THE SETTLEMENT.

Before beginning an analysis of whether to approve the agreed upon fee, it is important to note the Parties negotiated attorney's fees separately from the amount Class receives. Consistent with the fee agreement between Hebert and Class Counsel, the Parties calculated attorney's fee by *adding* of the Class' amount to the Class award to arrive at the total settlement. The Parties *did not* negotiate a total amount for the Class and subtract a percentage. Therefore, the attorney fees negotiated by the Parties never reduced the Class' award. As a necessary corollary, a decrease in the fee award will not result in an increase in the amount of the Net Settlement Fund. Perhaps more to the point, the attorney's fees called for under the Settlement are reasonable and there is no reason to reject the parties' agreements on this point.

### A. The Agreed Upon Contingent Fee is Consistent with Market Rates.

The "customary contingency" fee in wage and hour litigation is in the range of "35 to 40 percent." *Vela*, 276 F.3d at 681. Lead plaintiff Joseph Hebert agreed to a 40% contingency fee arrangement with Class Counsel. In exchange, Class Counsel fronted all the costs of litigation and Plaintiffs were under no obligation to repay Class Counsel if the case was unsuccessful.[2]

As addressed in the memorandum filed in support of the Motion for Approval, ECF 46,

---

[2] The Court need only look at the results of *Hall, et al. v. U.S. Cargo and Courier Service, LLC* 2:16-cv-330-EAS-EPD to note the potential risk of trying an independent contractor case to a jury in the Southern District of Ohio. In the case, the Court will note that after a four-day jury trial the jury returned a defense verdict and the three (3) plaintiffs recovered nothing. *See*, *Hall, et al. v. U.S. Cargo and Courier Service, LLC* 2:16-cv-330-EAS-EPD (USDC, S.D. Ohio, 2016), ECF 190. The case was taken on a contingency basis by one of the undersigned counsel on a contingency basis and as a result the plaintiffs' counsel recovered nothing for three and a half years work and lost money for the expenses it took to prosecute the case.

2

counsel expended significant effort to achieve a favorable settlement for the Class, and it did so at significant risk that it may not be compensated for any effort. Courts in this Circuit recognize that an attorney takes a substantial risk "when he or she devotes substantial time and energy to a class action despite the fact that it will be uncompensated if the case does not settle and is dismissed." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010). The risks were significant here, as counsel sought to certify a class of all workers classified as independent contractors and paid a day rate, regardless of the job position or locations, requiring not only extensive documentation for proof and calculation of damages, but also rendering the class susceptible to arguments individual concerns, as well as a variety of exemptions. Its efforts to work up this case to settlement and the risk that these efforts would be for naught all justify the attorneys' fees sought.

Counsel undertook this action and achieved a valuable result in a relatively short time for the benefit of all recipients. Consistent with lead Plaintiff's agreement with Class Counsel, Chesapeake also negotiated to pay a 40% fee in addition to, not as a reduction from, the Plaintiffs' recovery. Thus, it is undisputed that the agreed upon fee reflects a "market rate" for the services provided in this case.

### B. The Agreed Upon Fee is Consistent with Precedent.

"The percentage of the fund [approach] … most closely approximates how lawyers are paid in the private market and incentivizes lawyers to maximize class recovery, but in an efficient manner." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011). Unsurprisingly, courts routinely approve settlements that includes an agreed upon fee equal to 40% of the common fund (in very similar litigation). *See Whitaker v. BHP Billiton Petroleum (Americas) Inc.*, No. 4:17-cv-02698, at ECF No. 30 (S.D. Tex. Aug. 7, 2019) (approving settlement agreement and 40% attorneys' fees in a case involving drilling consultants paid a day-rate); *Whitlow v. Crescent Consulting, LLC*, No. 5:16-cv-01330, at ECF No. 189 (W.D. Okla. April 1, 2019) (approving settlement for drilling consultants paid a day-rate and 40% attorneys' fees); *Jones v. Bison Drilling and Field Services, LLC*, No.

3

7:17-cv-00167, at ECF Nos. 32 & 35 (W.D. Tex. Feb. 2019) (approving 40% fee in settlement for workers allegedly misclassified as independent contractors); *Brite v. Great Plains Analytical Services, Inc.*, No. 7:18-cv-00153, at ECF No. 24 (W.D. Tex. Feb. 12, 2019) (approving 40% fee in FLSA settlement); *Matthews v. Priority Energy Servs., LLC*, No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018), adopted, 2018 WL 2193030 (E.D. Tex. May 11, 2018) (same); *Sarabia v. Spitzer Industries, Inc.*, No. 4:17-cv-02092, at ECF No. 32 (S.D. Tex. May 24, 2018) (same); *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *see also Comeaux v. Quality Energy Svcs., Inc.*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (approving attorney fees of 40%); *Winingear v. City of Norfolk, Va.*, No. 2:12CV560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014) (awarding 38.44% ($1,230,250.00) in fees and costs on a $3,200,000 FLSA settlement and noting that "this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery").

Courts in this Circuit have found attorney's fees equal to 40% (or more) of the Settlement Fund are reasonable. *Salinas v. U.S. Xpress Enterprises, Inc.*, No. 113CV00245TRMSKL, 2018 WL 1477127, at *7 (E.D. Tenn. Mar. 8, 2018), adopted, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018) (awarding 40% of the fund in an FLSA action); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *5 (N.D. Ohio Mar. 26, 2019) (recognizing that "the value of the services rendered would support the 40% contingency fee percentage" though counsel willingly reduced this to 1/3 the common fund for combined attorney's fees and advanced costs); *Brittmon v. Upreach LLC*, No. 2:17-CV-219, 2018 WL 7889855, at *1 (S.D. Ohio Nov. 8, 2018) (same); *Kritzer v. Safelite Sols., LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding nearly 52 percent of the total recovery from Defendants as fees) ($235k plus costs on $455k fund); *see also, In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380-81 (S.D. Ohio 2006) ("Attorney's fees awards typically range from 20 to 50 percent of the common fund") (collecting cases); *In re Telectronics Pacing Sys., Inc.*, 137

F.Supp.2d 1029 (S.D. Ohio 2001) ("the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), rev'd on other grounds, 24 Fed. Appx. 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund").

### C. The Settlement Protects Class Members Who Wish to Participate (and Those Who Don't).

Under the Settlement, Settlement Class Members are presented with a notice of settlement along with a check for the amount being offered to them. Doc. 55-1 at ¶¶17, 21. Those who elect to negotiate or deposit the Settlement Checks thereby consent to join the FLSA collective action and compromise their rights to sue separately for overtime pay. Allowing Settlement Class Members to participate in the settlement by the act of negotiating a settlement check removes all barriers to receiving payment, and ensures the most comprehensive relief, because they are not required to fill in and return a written consent form.[3]

Courts across the country recognize this cashing-of-the-check FLSA opt-in procedure offers an efficient way for class members to participate in an FLSA collective settlement. For example:

- *Cerrato v. Durham Pub. Sch. Bd. of Educ.*, No. 1:16CV1431, 2017 WL 2983301, at *1 (M.D.N.C. Mar. 17, 2017) (conditionally certifying FLSA settlement class of "Any and all non-managerial employees employed by Integrity to work in Durham Public Schools pursuant to a contract between Durham Public Schools and SSC Service Solutions, Inc. ("Service Solutions") who worked overtime between September 16, 2012, and November 5, 2014, and who sign or negotiate the settlement checks distributed pursuant to the Settlement Agreement."

- *Edelen v. Am. Residential Servs.*, Civ. A. No. DKC-11-2744, 2013 WL 3816986, at *2 (D. Md. July 22, 2013) – granting final approval for FLSA settlement opt-in procedure where the agreement provided "members of the proposed collective class who sign or endorse their settlement checks from Defendants will be deemed to have agreed to (1) joining the FLSA collective action and (2) releasing their

---

[3] "Class members must usually file claims forms providing details about their claims and other information needed to administer the settlement." Manual for Complex Litigation § 21.66 (4th ed.).

> FLSA claims (including any claims for liquidated damages) arising out of Defendants' purported failure to calculate their overtime rates of pay properly during the period from September 23, 2008, to October 5, 2011."

- *Furman v. At Home Stores, LLC., No. 1:16-cv-08190, Doc. 30 (N.D. Ill. May 1, 2017) (Rowland, M.J.), granting final approval of FLSA collective action settlement involving cashing of the check FLSA opt-in procedure, where the back of each settlement check stated "By cashing this check, I agree to join the case [], and I agree to participate in the Settlement and be bound by the release of claims in the Settlement Agreement." Id. at \*3-4; see also Furman, No. 1:16-cv-08190, Doc. 28-1 at \*11.*

- *Seghroughni v. Advantus Rest., Inc., No. 8:12-cv-2000-T-23TBM, 2015 WL 390329, at \*1 n.\* (M.D. Fla. Jan. 28, 2015) – granting preliminary approval of FLSA class and collective action settlement and approving use of cashing of the check method where the settlement agreement stated "[b]y endorsing his or her settlement check, each FLSA Class Member shall release Defendants from all FLSA claims, as well as state wage and hour claims, that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation, through the date on which the Court grants preliminary approval of the settlement."*

- *Ortiz v. Chop't Creative Salad Co. LLC, No. 13 Civ. 2541(KNF), 2014 WL 1378922, at \*\*2, 14 (S.D.N.Y. Mar. 25, 2014) – approving cashing check opt in procedure for FLSA collective action members who endorse their settlement checks.*

This method is "calculated to maximize the collective members' participation in the settlement" and such "efforts to maximize participation suggest that this is not a settlement where defendants are attempting to buy peace by paying off the attorneys and leaving the collective members with a recovery that is only illusory." *Besic v. Byline Bank, Inc.*, No. 16 C 8003, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015).

Settlement Class members who negotiate or deposit the Settlement Checks sent to them are consenting to join the FLSA collective action portion of this lawsuit and giving up any rights to separately sue for overtime pay under the FLSA, but Settlement Class members who do not negotiate or deposit the Settlement Checks they receive will preserve all their rights under the FLSA. *Id.* Thus, the "cashing-of-the-check" approach to settlement participation respects each individual's right to choose whether to participate **and** drastically reduces the burden on participation. *See* Andrew C. Brunsden, Hybrid Class Action, Dual Certification, and Wage Law Enforcement in the

Federal Courts, 29 Berkeley J. Emp. & Lab. L. 269, 294 (2008). This method is fair to all parties, both collectively and individually.

### III. REDUCING THE NEGOTIATED FEE WOULD NOT BENEFIT ANYONE OTHER THAN CHESAPEAKE.

As discussed above, there is no benefit to the Settlement Class Members if the Court were to reduce the amount of attorneys' fees. As a result, "sliding plaintiffs' counsel's fee … down by even large amounts" would merely "increase the total funds that revert to C[hesapeake], but would not lower or raise the recovery of any … Plaintiff by even a penny." *Warren v. Cook Sales, Inc.*, No. CV 15-0603-WS-M, 2017 WL 325829, at *8 (S.D. Ala. Jan. 23, 2017) (awarding the % fee requested in the settlement agreement). Thus, the only party that would benefit from a reduction in the agreed upon fee is Chesapeake, who has allegedly violated the FLSA by failing to pay overtime to its drilling consultants.

Any reduction in the fee, therefore, would not balance the scales or increase the benefits to the class but instead would merely be punitive against Plaintiff's Counsel. Nothing in the history of this action would justify such a measure against counsel, nor has any party argued for a reduction. Indeed, every party to this litigation bargained for this result. And any potential party that disagrees with the arrangement can retain all their rights by simply doing nothing (they don't even have to opt-out!). Any concern by the Court that this Settlement is made at the expense of the Plaintiffs is allayed by the terms of agreement and the efforts of all parties.

"While attorney's fee settlements in FLSA cases may be problematic … where the fee award adversely impacts the plaintiffs' recovery, no such concerns exist here." *Warren*, 2017 WL 325829, at *8. "As such, the sound policy justifications counseling in favor of judicial reasonableness review of the attorney's fee portion of FLSA settlements are not implicated." *Id.* The agreed upon fee should be approved.

**IV. CONCLUSION.**

The Parties reached this Settlement in contested litigation, and it resolves a *bona fide* dispute. Class Counsel's fee is consistent with similar settlements involving allegedly misclassified drilling and completions consultants. Further, if this amount is not approved, the Net Settlement Fund shared by the Settlement Class Members will not increase. All parties agree the contingency fee is entirely appropriate. However, if the Court is disinclined to approve the agreed upon fee, Class Counsel respectfully suggests the Court consider a contingency fee between 35 and 40%.

Respectfully submitted,

*/s/Richard M. Schreiber*
Michael A. Josephson
Texas Bar No. 24014780
mjosephson@mybackwages.com
Andrew W. Dunlap
Texas Bar No. 24078444
adunlap@mybackwages.com
Richard M. Schreiber
Texas Bar No. 24056278
rschreiber@mybackwages.com
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: 713-352-1100
Facsimile: 713-352-3300

**AND**

Richard (Rex) Burch
Texas Bar No. 24001807
rburch@bucknerburch.com
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone : 713-877-8788
Facsimile: 713-877-8065

**AND**

Robert E. DeRose, II
Bar No. 0055214
bderose@barkanmeizlish.com
**BARKAN MEIZLISH DEROSE WENTZ MCINERNEY PEIFER, LLP**
250 E. Broad St., 10th Floor
Columbus, Ohio 43215

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

On September 3, 2019, I served this document by ECF electronic filing on all known parties.

*/s/ Richard M. Schreiber*
**Richard M. Schreiber**