# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Joseph Hebert, individually and on behalf of
all others similarly situated,

                Plaintiffs,             :       Case No. 2:17-cv-852

     - vs -                                 Judge Sarah D. Morrison
                                        Magistrate Judge Kimberly A. Jolson

Chesapeake Operating, Inc. and Chesapeake
Operating, LLC,
                                        :

                Defendants.

## **ORDER**

This case is before the Court on the Joint Motion for Approval of FLSA Settlement ("Motion to Approve"). (ECF No. 45.) After a hearing, supplemental briefing and thorough consideration, the Court **DENIES** the motion pursuant to the following analysis.

## I.    BACKGROUND

Plaintiff Joseph Hebert's First Amended Complaint alleges he worked for Defendant Chesapeake as a "consultant/company man" from January 2014 through January 2016. (ECF No. 13 at ¶ 2, 11.) He asserts Chesapeake willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 200 *et seq.*, by not paying him overtime. He also claims that Chesapeake violated the Ohio Minimum Fair Wage Standards Act, R.C. 4111.03 *et seq.*, and the Ohio Prompt Pay Act R.C. 4113.15 *et seq.*, for the same reason.

Hebert claims Chesapeake improperly classified him as an independent contractor and paid him a day rate instead of a salary and overtime. (ECF No. 13 ¶ 5.) He seeks collective action treatment for his federal claims under § 216(b) of the FLSA and class action treatment under

Fed. R. Civ. P. 23 ("Rule 23") for his state claims. He wants the class defined as "all current and former workers of Chesapeake Operating who were classified as independent contractors and paid a day-rate during the last three (3) years." *Id*. at ¶ 15-16.

Chesapeake denies all claims.

In April 2018, the Court stayed the matter at the parties' request for settlement discussions. Thereafter, Hebert filed, then withdrew, a motion for equitable tolling. The docket was silent until July 16, 2019, when the parties jointly filed the instant Motion to Approve.

In sum, the settlement under consideration ("Proposed Agreement"), provides that the parties agree that for purposes of settlement, the requirements for collective certification are satisfied. (ECF No. 55-1 at 2.) The Proposed Agreement attempts to settle the instant matter via a common fund of $8.55 million, the "Gross Settlement Amount." *Id*. 3. The Proposed Agreement provides that Plaintiffs' Counsel shall receive attorneys' fees in an amount of $3,420,000, which is 40% of the gross amount. *Id*. 3, 7. After proposed payments of $3,420,000 for attorney's fees, $40,000 for settlement administrative costs and a $10,000 service award for Hebert, the "Net Settlement Amount" is $5.05 million. *Id*. 3.

The Proposed Agreement is a one-step, opt-in settlement. "Eligible Class Member" is defined to include Hebert, those that have previously consented, and all "Settlement Class Members who timely opt-in to the Settlement Class by accepting, endorsing, and depositing their respective Settlement Award." (ECF No. 55-1 at 3.) "Settlement Class Members," in turn, include those who have previously opted-in to this suit as well as individuals identified on Exhibit B ("Exhibit B") to the Proposed Agreement.[1] *Id*. 4. That combined group worked as

---

[1] Reymundo Gonzalez, Joshua Hastings, Aaron McAlexander, Michael Mogerman and Kenneth Stucks all consented on October 6, 2017. (ECF No. 4.) Exhibit B is a listing of each

2

Chesapeake consultants who were classified as independent contractors that received a day rate. *Id*. 4.

According to the Proposed Agreement, the settlement class shall not exceed 400 members. *Id*. The Class Period for those previously opting-in is three years prior to joining the case through the date of any approval order. *Id*. 3. The Class Period for members performing work in Ohio is three years prior to the date of Hebert's Complaint through that same date. *Id*.

The Proposed Agreement does not provide the formula used to arrive at each member's award; rather, the settlement provides "[a]ll Eligible Class Members shall be paid a Settlement Award[2] from the Net Settlement Amount." *Id*. 8. Exhibit B specifies the "pro rata" net amount each class member would receive if the Proposed Agreement is approved. The average gross check amount to each class member is $21,375. (ECF No. 55-1 at 1 n1.)

Court approval would result in the dismissal of all Eligible and Settlement Class Members' claims, both federal and state. In addition, the Court would retain jurisdiction over the Proposed Agreement.

The Court conducted an oral hearing addressing the motion on August 23, 2019. During the hearing, the Court noted that within this District, attorney's fees awarded in a FLSA common-fund, one-step unpaid overtime collective action settlement typically did not exceed 33% of the fund. The Court specifically advised counsel that it believed the 40% being sought was high, and extended the parties the courtesy of allowing additional briefing on that issue. In

---

settlement class member and their respective award under the Proposed Agreement. (ECF No. 55-1.)

[2] "Settlement Award" is the payment each Eligible Class Member shall receive. (ECF No. 55-1 at 4.)

response, Plaintiffs filed their Supplement on September 3, 2019, arguing that 40% of the fund is a reasonable fee. (ECF No. 56.)

**II.     ANALYSIS**

"A district court should approve a [FLSA] collective action settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a bona fide dispute between the parties." *Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D. Ohio May 4, 2018) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)).

When reviewing a settlement of plaintiffs' FLSA claims, the district court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Sharier v. Top of the Viaduct, LLC*, No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *3-4 (N.D. Ohio Mar. 13, 2017) (citations and quotations omitted.)  The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id*.

To determine whether a settlement is "fair and reasonable," courts often analyze the following factors: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13-14 (E.D. Ky. Oct. 23, 2008) (citing *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). "'The Court may choose to consider

only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.'" *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008)).

In this case, the parties explicitly state that the Proposed Agreement is contingent upon the Court's approval of the Plaintiffs' 40% attorney's fee request. (ECF No. 46 at 28). Indeed, the transcript from the Court's August 23, 2019 hearing contains counsels' specific affirmance of that contingency. Because the Court finds that the requested fees are not reasonable, analysis of the foregoing factors is unnecessary. Instead, the Court turns to a discussion as to why an award of fees of 40% of the fund is not justified under the present facts.

### A. Sixth Circuit Precedent Requires the Court to Consider the Reasonableness of Attorney's Fees in FLSA Settlements.

At the outset, the Supplement challenges the Court's duty to review the proposed 40% attorney's fee award. Plaintiffs' Counsel cite to *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026-27 n. 1 (8th Cir. 2019), for the proposition that courts lack authority to review settled attorney's fees in FLSA matters. (ECF No. 56 at 1.) While that court so held, it did so because the attorney's fees were negotiated separately from the settlement amount relative to plaintiff's claim. *Barbee*, 927 F.3d at 1027. Hence, as a threshold issue, counsel must establish that they reached the Proposed Agreement in the same manner for *Barbee* to even arguably be applicable.

The parties' belated attempt to satisfy that prerequisite fails for two reasons. First, the parties' thirty-page July 16, 2019 Memorandum in Support of the Joint Motion for Approval, which was filed more than a month after *Barbee* issued, is devoid of mention of any such negotiation tactic. The Memorandum specifically states "[t]he Court should award attorneys' fees as a percentage of the total fund made payable to the Settlement Class Members." (ECF No.

5

46 at 20.) Second, the terms of the Proposed Agreement itself belie the parties' new contention that attorney's fees were negotiated separately from the plaintiffs' recovery. (ECF No. 56 at 2.) The Proposed Agreement defines the "Gross Settlement Amount" as $8.55 million. (ECF No. 55-1 at 3.) In turn, "Net Settlement Amount" is the Gross Settlement Amount *less* payment of Plaintiffs' Counsels' attorney's fees in the amount of 40% of the *Gross Settlement Amount*, or $3.42 million. *Id*. Class members are to be paid from the Net Settlement Amount and the Proposed Agreement further specifically states that each member's net "pro-rata damages" are set forth in Exhibit B. (ECF No. 55-1 at 8.) Taken together, this language clearly illustrates a typical common fund settlement with fees part of the global resolution, not separately negotiated categories of recovery.

Another, more basic reason dictates that the Court depart from *Barbee's* analysis here. *Barbee* is an Eighth Circuit Case. This Court is within the Sixth Circuit's province. And, Sixth Circuit case law indicates that this Court must review settled attorney's fees for reasonableness in common fund cases such as this one. *See Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (holding that attorney's fees in common fund cases must be reasonable); *see also Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993) ("In this circuit, we *require* only that awards of attorney's fees by federal courts in common fund cases be *reasonable* under the circumstances.") (emphasis added) (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983)); *see also Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) (holding same); *see also Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, at *18 (S.D. Ohio June 30, 2017) (noting the court "must" examine reasonableness of attorney's fees request in a common fund settlement), *Report and Recommendation* adopted in No. 2:15-cv-2701 on July 25, 2017 at ECF No. 40; *see also Wade v. Werner Trucking Co.*, No.

2:10-CV-270, 2014 U.S. Dist. LEXIS 78341, at *4-5 (S.D. Ohio June 5, 2014) (holding attorney's fees reasonable in a FLSA common fund, collective action settlement); *see also Kritzer v. Safelite Sols.*, LLC, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *9 (S.D. Ohio May 30, 2012) ("Insofar as the parties propose to settle claims of the opt-in FLSA plaintiffs, the proposed settlement agreement is subject to approval by the Court under 29 U.S.C. § 216(b).") (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *5 (N.D. Ohio Mar. 8, 2010)). For certain, the parties' Memorandum in Support recognizes this as the governing law by devoting nine pages of its initial thirty-page brief to argue fees of 40% are reasonable under *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). (ECF No. 46 at 20-29.)

This Court's reasonableness review of attorney's fees is especially appropriate where, as here, the parties explicitly condition the viability of the Proposed Agreement upon approval of a specific attorney's fee amount. Moreover, the Proposed Agreement's one-step structure prevents potential class members from objecting to the requested fee; rather, potential class members are simply presented with a check and told cashing the check equates to opting-in to the suit while failure to negotiate the check means they opt-out of the case. This, too, makes the Court's reasonableness review even more necessary.

In sum, the Court concludes that *Barbee* is neither controlling nor applicable. The Court has both the authority and the responsibility to review the reasonableness of requested fee award in this common fund case under *Moulton*, *Rawlings*, *Pelzer*, *Moore*, *Wage*, *Kritzer* and *Dillworth*. The Court now shifts its focus to an examination of that issue.

### B. The Requested Fee is Not Reasonable.

Where a settlement agreement proposes an award of attorney's fees, such fees must be reasonable. *See Moulton*, 581 F.3d at 352 (citing *Rawlings*, 9 F.3d at 516). This requirement is also reflected in § 216(b) of the FLSA, which provides "[t]he court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (quoting *Blum v. Stenson,* 465 U.S. 886, 897 (1984) (internal quotation marks and further citations omitted).

There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). Here, the parties provide no lodestar information and seek approval under the percentage method. The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement. *Id.* Because the percentage approach is "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases, and because the Court has no information from which to conduct a lodestar analysis, the Court will consider the percentage method in the case *sub judice*. *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at * 14-15 (S.D. Ohio July 11, 2014) (adopting percentage approach).

"An award of attorneys fees lies within the sound discretion of the district court." *Ramey*, 508 F.2d at 1196. When determining whether a certain fee request is reasonable, the Court considers a myriad of factors that are all within the Court's knowledge. *See Minor v. Twin Rivers Constr. Inc.*, No. 2:16-cv-1002, 2017 U.S. Dist. LEXIS 191501, at *3 (S.D. Ohio Nov. 20,

2017). Those include: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Ramey*, 508 F.2d at 1196. The Court considers the factors out of order for ease of analysis.

**Value of Benefit**. The Court concludes the Proposed Agreement would yield a good benefit to the potential class. Under the Proposed Agreement, the class average gross payout per member is $21,375. Counsel stated at the hearing that the Settlement Class Members' recovery rate under the Proposed Agreement is 50%. Additionally, "the settlement provides relatively early relief to class members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue." *Swigart*, 2014 U.S. Dist. LEXIS 94450, at *16.

**Contingency Fee**. Plaintiffs' Counsel undertook this case on a contingency basis, which means counsel absorbed the risk of an unsuccessful outcome and no fee of any kind. This favors granting the attorney's fees award. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *30.

**Society's Stake**: "Society's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award." *Gentrup v. Renovo Servs.*, LLC, No. 1:07-cv-430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011).

**Complexity of the Litigation**: While FLSA collective and class matters are inherently complex, counsel testified at the hearing that this is the last of several similar lawsuits throughout the country that they have settled. The docket in this matter prior to the instant filing reflects a single motion to toll and stock clawback and protective orders. Consequently, this case appears

to be a spin-off of the prior similar suits Plaintiffs' Counsel have led or participated in such that this case has not been particularly novel or complex.

**Counsel's skill**: The affidavit of Plaintiffs' Counsel Michael Josephson indicates he and his firm are very experienced in FLSA collective cases. (ECF No. 46 at 26-27.)

**Value of services on an hourly basis**. Plaintiffs' Counsel seek an "eyebrow-raising 40% fee." *Coulter-Owens v. Rodale, Inc*., No. 14-12688, 2016 U.S. Dist. LEXIS 134243, at *13 (E.D. Mich. Sep. 29, 2016). In an attempt to address the Court's stated concerns that the requested fees seemed to be high, the Supplement directs the Court to several cases to argue that 40% is within the range of reasonable attorney's fees recovered for FLSA matters. (ECF No. 56 at 3-5.)

The cited cases are easily distinguishable from the present facts. To illustrate, Plaintiffs' Counsel first cites to *Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001), for the proposition that the customary contingency fee in cases like these is between 35 to 40 percent. (ECF No. 56 at 2.) Yet, the Fifth Circuit did not so hold. Rather, it was simply quoting from the district court's decision upon which the appeal before it was based. *Vela*, 276 F.3d at 681. More importantly, *Vela* involved a decision on the merits, not a global settlement or a common-fund, one-step settlement with little to no motions practice like this Court presently faces. *Vela* is further distinguishable in that it applied Texas law governing attorney's fees and the Court based its award on the number of hours claimed in the fee application. The Fifth Circuit affirmed an award of 30% of the judgment.

Plaintiffs' Counsels' citations to additional cases from outside of this circuit fare no better as those decisions are not binding upon this Court, lack analysis, employ lodestar, and/or stand at a different procedural posture than this matter. For example, Plaintiffs' Counsels' cited cases lacking analysis on the reasonableness of a 40% fee award include *Whitaker v. BHP*

*Billiton Petroleum, Inc*., No. 4:17-cv-2698, at ECF No. 30 (S.D. Tex. Aug. 7, 2019), *Brite v. Great Plains Analytical Services, Inc*., No. 7:18-cv-153, at ECF No. 24 (W.D. Tex. Feb. 12, 2019), *Sarabina v. Spitzer Industries, Inc*., No. 4:17-cv-2092, at ECF No. 32 (S.D. Tex. May 24, 2018), and *Comeaux v. Quality Energy Svcs., Inc*., No. 6:15-cv-2510, at ECF No. 78 (W.D. La. July. 20, 2017). Plaintiffs' Counsels' listed cases utilizing lodestar to determine that 40% is reasonable include *Winingear v. City of Norfolk, Va*., No. 2:12CV560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014) (approving 35% of the fund using lodestar as a benchmark), *Matthews v. Priority Energy Servs., LLC*, No. 6:15CV448, 2018 WL 1939327, at *1 (W.D. Tex. April 20, 2018). Yet, despite a hearing and the opportunity for additional briefing, Plaintiffs' Counsel do not provide any information to enable the Court to conduct a lodestar or cross-check analysis. Finally, the remainder of the out-of-circuit cases the Supplement cites have materially different procedural postures than this matter. *See Whitlow v. Crescent Consulting, LLC*, No.5:16-cv-1330, at ECF No. 189 (W.D. Okla. April 1, 2019) (involving significant discovery disputes, motions practice and conditional certification); *see also Legros v. Mud Control Equip., Co*., No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (settling after conditional certification).[3]

Plaintiffs' Counsel do direct the Court's attention to several cases within the Sixth Circuit in an attempt to establish that their 40% fee request is reasonable. Again, however, those matters are materially distinguishable. While the court did grant attorney's fees of 40% in *Salinas v. United States Xpress Enters., Inc*., No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800 (E.D. Tenn. Mar. 8, 2018), it did so only after the parties had engaged in "significant litigation,"

---

[3] Although the Court is unable to locate *Jones v. Bison Drilling and Field Services, LLC*, No. 7:17-cv-167, at ECF Nos. 32 & 35 (W.D. Tex. Feb. 2019) with the citation provided, the case is not from the Sixth Circuit. (ECF No. 56 at 4.)

and plaintiffs' counsel provided the court with lodestar information that reflected a concession of a half-million dollars in fees from the lodestar. *Salinas*, 2018 U.S. Dist. LEXIS 50800, at * 3, 21-24. To repeat, Plaintiffs' Counsel in the instant matter chose not to provide lodestar data to the Court. In addition, Plaintiffs' Counsel have not conceded any fees, although they do waive costs. (ECF No. 56 at 1 n.1.) Consequently, *Salinas* is unpersuasive.

Plaintiffs' Counsel next rely upon *Barnes v. Winking Lizard, Inc*., No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *13 (N.D. Ohio Mar. 26, 2019) to prove that a 40% attorney's fee recovery is reasonable in this instance. *Barnes,* a FLSA case, does state that "the value of services rendered would support the 40% contingency fee percentage." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *15. However, the *Barnes* class had been conditionally certified and counsel had agreed to accept a reduced percentage of 33 1/3%. *Id.*

Plaintiffs' Counsels' cited intra-district cases likewise are not persuasive. To begin, the parties refer to *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 U.S. Dist. LEXIS 224730 (S.D. Ohio Nov. 8, 2018). That FLSA matter, in which a 40% award was approved, is not dispositive because it involved conditional certification, notice and additional discovery, none of which has transpired in the case presently before the Court.

Second, Plaintiffs' Counsel rely upon *In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369, 380 (S.D. Ohio 2006). As the case caption implies, it was not a FLSA case. It involved "extensive discovery and motion practice," a 23% fee request, lodestar cross-check and affidavits from local counsel stating that the amount of attorney's fees being sought was reasonable. Each of those factors are missing here. *In re Broadwing*, 252 F.R.D. at 374. Notably, when finding the 23% requested fee to be reasonable, the *In re Broadwing* Court recognized that amount was

"well below the 1/3 contingent fee percentages common in contingent fee plaintiffs' litigation." *Id.* 380.

Third, Plaintiffs' Counsel cite to *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 1029, 1040 (S.D. Ohio 2001) and *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 208 (S.D. Ohio 1997), for the proposition that "twenty to fifty percent of the common fund" has been found reasonable. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1046; *see also In re S. Ohio Corr. Facility*, 173 F.R.D. at 217. Yet, the single case both rely upon to support that statement did not involve the FLSA and that court approved an attorney's fee award of 18% of the fund using lodestar. *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986). Moreover, *In re Telectronics* is a Multi-District Litigation products liability case wherein the Court approved a 26.6% fee request utilizing the lodestar method, while noting that "[g]enerally, in common fund cases, the fee percentages range from 10 to 30 percent (10%-30%) of the common fund created." *In re Telectronics*, 137 F. Supp. 2d at 1040, 1042. Additionally, *In re S. Ohio Corr. Facility* is a 42 U.S.C. § 1983 case with a Fed. R. Civ. P. 23 certified class utilizing lodestar because "the court usually utilizes the lodestar method for determining a fee award" in § 1983 actions. *In re S. Ohio Corr. Facility*, 173 F.R.D. at 217. The distinctions among those cases and the present are apparent.

More striking, however, are the cases the Supplement ignores—cases that this Court directed Plaintiffs' Counsel to when it raised concerns about the reasonableness of the fee request. The Court's August 23, 2019 Order allowing additional briefing directed Plaintiffs' Counsel to four cases: (1) *Thorn v. Bob Evans Farms*, Inc., No. 2:12-cv-00768, 2016 U.S. Dist. LEXIS 195207, at *2 (S.D. Ohio Feb. 25, 2016); (2) *Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 U.S. Dist. LEXIS 166605, at *17 (S.D. Ohio Dec. 2, 2016); (3) *Osman*, 2018

U.S. Dist. LEXIS 78222, at *9 (N.D. Ohio May 4, 2018); and (4) *Kritzer,* 2012 U.S. Dist. LEXIS 74994, at *11 (S.D. Ohio May 30, 2012). The failure to address the first three suggests there is no valid basis for differentiating them from the present facts.

*Thorn* was a FLSA collective action involving allegations of unpaid overtime. *Thorn*, 2016 U.S. Dist. LEXIS 195207, at *2. After the court had preliminarily approved the parties' settlement and conditionally certified the class in that case, the parties moved for final approval of their settlement agreement which included a proposed award of attorney's fees in the amount of 33.92% of the common fund. The *Thorn* court recognized that the matter was "complex" and approved that sum after considering the lodestar amount, "which is used to confirm the reasonableness of the percentage-of-the fund award." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). Thus, *Thorn* directs that 33% of the fund is reasonable when the case is "complex" and the supplied lodestar information supports that amount. *See also Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 U.S. Dist. LEXIS 46846, at *110 (S.D. Ohio Apr. 4, 2014) (approving 21%); *see also Swigart*, 2014 U.S. Dist. LEXIS 94450, at *19 (approving 33%).

*Vigna* was a FLSA unpaid overtime case involving a motion to approve a common fund settlement wherein the defendants agreed to pay plaintiffs' counsel 33% of the settlement fund for attorney's fees. When reviewing the reasonableness of that amount, the district court concurred with the parties that the majority of the *Ramey* factors favored the award. *Vigna*, 2016 U.S. Dist. LEXIS 166605, at *13. However, when considering the value of services rendered, Judge Dlott noted the case came at the end of other very similar litigation among the parties and was therefore not complex. *Id*. 17. Judge Dlott further considered the lodestar and resulting multiplier as well as the 1983 Rubin Committee rates to ultimately hold that 33% of the common

fund was unreasonable. *Id.* *14-18 ("Courts in this district often refer to the 1983 Rubin Committee rates as a basis for comparison.") (citing *Hunter v. Hamilton Cty. Bd. of Elections*, No. 1:10-cv-820, 2013 U.S. Dist. LEXIS 141297, 2013 WL 5467751, at *17 (S.D. Ohio Sept. 30, 2013)).

*Vigna* mirrors the present facts. *Vigna* was also a FLSA matter involving a common fund settlement presented to the court for approval. *Vigna* was the last of several similar cases that Vigna's attorneys handled, like Plaintiffs' Counsel in this matter. And while the *Vigna* parties presented Judge Dlott with lodestar information to perform a cross-check, the Court has no such information present here. Consistent with *Thorn* and *Vigna*, the Court holds that the requested fees of 40% of the fund are not reasonable.

Our sister Ohio district court holds similarly. *Osman* approved a FLSA 33% common fund attorney's fee award in a collective action while noting that percentage was typically held to be reasonable. *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6; *see also Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, at *20-22 (N.D. Ohio June 15, 2010) (approving 33% of the common fund as attorney's fees). In so holding, the *Osman* court conducted a lodestar-cross check while noting "[a] percentage-of-the-fund attorneys' fee award is reasonable when it amounts to double the loadstar attorneys' fees incurred by the plaintiffs' counsel." *Osman*, 2018 U.S. Dist. LEXIS 78222, at *7.

The fourth and final case the Court referred to in its August 23, 2019 Order was *Kritzer*. Plaintiffs' Counsel mention *Kritzer* in a string cite, without discussion. (ECF No. 56 at 4.) *Kritzer* approves a 52% fee award in a common-fund, FLSA collective action settlement. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *11. That holding is a marked departure from other cases within this District, and the reasons for that are three-fold. First, *Kritzer* was "vigorously

15

contested on law and fact." *Id*. 30. Second, *Kritzer's* results were "exceptional." *Id*. 28-29. Third, *Kritzer* noted that the requested percentage was "less than what the fee would be under a lodestar calculation." *Id*. Those factors are not present here.

In sum, 33% is typical for attorney's fees in common fund, FLSA collective actions in this District, though a fee award in a particular case may be higher or lower based on unique circumstances in a particular case. In this case, considering the applicable law and the facts presented, an award of attorney's fees of 40% of the common fund is too high and is therefore unreasonable. Because the parties have made approval of the Proposed Agreement contingent upon that specific sum, the Court must **DENY** the Motion to Approve.

Anticipating this result, Plaintiffs' Counsel "respectfully suggests the Court consider a contingency fee between 35 and 40%." (ECF No. 56 at 12.) The Court declines the invitation to issue an advisory opinion.

### III. CONCLUSION

An award of attorney's fees of 40% of the common fund is unreasonable under the circumstances. Accordingly, the Court **DENIES** the Motion for Approval. (ECF No. 45.)

Counsel shall confer and jointly submit a proposed case schedule to Magistrate Judge Jolson within fourteen days of this Opinion & Order.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**