# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH HEBERT, individually and on behalf of all others similarly situated,** | § § § | |
| *Plaintiffs,* | § § | **NO. 2:17-CV-00852-SDM-KAJ** |
| **vs.** | § § § | |
| **CHESAPEAKE OPERATING, INC. AND CHESAPEAKE OPERATING, LLC,** | § § § § | |
| *Defendants.* | § § | |

## SETTLEMENT AGREEMENT AND RELEASE

1.      This Settlement Agreement and Release (the "Settlement Agreement") is entered into between Plaintiff Joseph Hebert ("Plaintiff") on the one hand, and Chesapeake Operating, Inc. and Chesapeake Operating, LLC on the other hand (hereinafter, both Chesapeake entities together as "Chesapeake") (hereinafter, all together as the "Parties"), subject to the approval of the Court (as defined herein).

## RECITALS

2.      Plaintiff, individually and on behalf of the Settlement Class (as defined herein), assert in the Action (as defined herein) that Chesapeake  failed to pay proper overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Ohio Minimum Fair Wage Standards Act, O.R.C. §§4111 *et seq.*, the Ohio Prompt Pay Act, and Ohio Rev. Code §4113.15.

3.      As a result of the Parties' arms'-length negotiations and mediation with an experienced wage and hour mediator, Anne Marie Estevez, the Parties have agreed to settle this Action according to the terms of this Settlement Agreement.

4.      Class Counsel (as defined herein) has made a thorough and independent investigation of the facts and law relating to the allegations in the Action.  In entering into this Settlement Agreement, Class Counsel has considered: (a) the facts developed in litigation and during the Parties' ADR process and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Chesapeake; and (c) the desirability of consummating this settlement according to the terms of this Settlement Agreement.  Plaintiff has

*Execution Copy -* Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM

1

concluded that the terms of this Settlement Agreement are fair, reasonable and adequate[1], and that it is in the best interests of himself and the Settlement Class to settle their claims against Chesapeake pursuant to the terms set forth herein.

5. Chesapeake denies the allegations in the Action and denies that it engaged in any wrongdoing or violation of law. Chesapeake is entering into this Settlement Agreement because it will eliminate the burden, risk and expense of further litigation. Except for purposes of effectuating the Parties' settlement, neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, may be used in any way as an admission, concession or indication by or against Chesapeake of any fault, wrongdoing or liability whatsoever, including any concession that certification of a class other than for purposes of this Settlement Agreement would be appropriate in the Action or any other case.

6. The Parties recognize that notice to the Settlement Class of the material terms of this Settlement Agreement, as well as Court approval of this Settlement Agreement, are required to effectuate the Settlement Agreement, and that the Settlement Agreement will not become operative until the Court grants approval of it and the Settlement Agreement becomes effective.

7. The Parties stipulate and agree that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) are met. Should this Settlement Agreement not become final, such stipulation to collective action certification shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context.

8. In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the approval of the Court and the other conditions set forth herein, that Plaintiff and the Eligible Class Members' (as defined herein) lawsuit against Chesapeake shall be settled, compromised and dismissed, on the merits and with prejudice, and that the Released Claims (as defined herein) shall be finally and fully compromised, settled and dismissed as to the Releasees (as defined herein), in the manner and upon the terms and conditions set forth herein.

## DEFINITIONS

9. The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

a. "Action" means the matter of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM, in the United States District Court for the Southern District of Ohio, Eastern Division.

b. "Approval Order" means the Court's approval order approving the terms and conditions of this Settlement Agreement.

---

[1] For example, the average gross settlement per Settlement Class Member is $21,163.36.

*Execution Copy* - Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM

c.   "Class Counsel" means Josephson Dunlap, LLP, Bruckner Burch, PLLC and Barkan, Meizlish, DeRose, Wentz, McInerney and Peifer, LLP.

d.   "Class Period" means the three-year relevant time period set forth in the Settlement Class definition below, except as to (a) those that have already joined the Action, in which case the Class Period is three years prior to the joining of this Action through the date of the Approval Order, and (b) those that performed work in Ohio, in which case the Class Period is three years prior to the filing the Lawsuit through the date of the Approval Order.

e.   "Court" means the United States District Court for the Southern District of Ohio, Eastern Division.

f.   "Chesapeake's Counsel" means Littler Mendelson, P.C.

g.   "Eligible Class Member" means those that have opted in to the Lawsuit prior to the Approval Order and all Settlement Class Members who timely opt-in to the Settlement Class by accepting, endorsing and depositing their respective Settlement Award.

h.   "Effective Date" means the first business day following the Court's Approval Order.

i.   "Fee Award" means the award of attorneys' fees that the Court authorizes to be paid to Class Counsel for the services they provided to Plaintiff and the Settlement Class in the Action.

j.   "Gross Settlement Amount" means the maximum amount that Chesapeake shall pay in exchange for the release of all Released Claims by Plaintiff and the Eligible Class Members, which is the sum of $8,550,000.00, excluding the employers' share of federal and state payroll taxes. In no event shall the Gross Settlement Amount exceed this sum.

k.   "Net Settlement Amount" means the Gross Settlement Amount less: (i) the payment of attorneys' fees to Class Counsel, not to exceed $2,821,500.00, which is approximately 33 percent of the Gross Settlement Amount[2]; (ii) the Settlement Administrator's (as defined herein) costs related to administering this Settlement Agreement, which are estimated not to exceed $40,000.00; and (iii) a service award to Hebert in an amount not to exceed $10,000.00.

l.   "Notice Deadline" means the date ninety (90) days after the Notice of Settlement (as defined herein) and Settlement Award Check are initially mailed by the Settlement Administrator to the Settlement Class. Settlement Class Members shall have until the Notice Deadline to cash their Settlement Award Check.

m.   "Notice of Settlement" means the notice to the Settlement Class substantially in the form as Exhibit A attached hereto or as approved by the Court.

n.   "Released Claims" means any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees

---

[2] This amount includes the payment of out-of-pocket costs incurred by Class Counsel.

*Execution Copy* - Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM

3

(as defined herein) for alleged unpaid wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or any other compensation and relief arising under the FLSA or any other state or local wage-related law applicable to the work performed for Chesapeake during the Class Period.

o. "Releasees" means Chesapeake Operating, Inc., Chesapeake Energy Corporation and Chesapeake Operating, LLC, and their respective past, present and future parent companies, subsidiaries, affiliates, agents, employees, owners, members, officers, directors, partners, Releasees' benefit plans and any benefit plan administrators (including third party administrators), co-employers, joint employers, indemnitors, indemnitees, payrolling companies, Releasees' contribution plans and any administrators of such, contractors, vendors, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers, except that the release of any third-party vendor or contractor that supplied or staffed a Settlement Class Member to Chesapeake shall be conditioned upon Chesapeake providing written notice to Class Counsel that the vendor has met Chesapeake's requirements to be included as a Released Party, regardless of whether such notice precedes or follows the approval or funding of this Agreement.

p. "Settlement Administrator" means CPT, Inc. subject to the approval of the Court.

q. "Settlement Award" means the payment that each Eligible Class Member shall be entitled to receive pursuant to the terms of this Settlement Agreement.

r. "Settlement Class" or "Settlement Class Member" means those that have opted in to the Lawsuit prior to the Approval Order as well as the following individuals identified on Exhibit B, such combined group not exceeding 400 current and former consultants who during the Class Period (a) worked on behalf of Chesapeake and (b) were classified as independent contractors and (c) were paid a day rate.

s. "Settlement Award Check" means the check for each Settlement Class Members' Settlement Award.

## RELEASES

10. **Release**. In consideration of the benefits to be received by Plaintiff and the Eligible Class Members under this Settlement Agreement, upon the Effective Date:

a. Plaintiff shall be deemed to have released and forever discharged Releasees from any and all Released Claims, and, in addition, shall be deemed to have released Releasees from any and all claims, demands, rules or regulations, or any other causes of action of whatever nature, whether known or unknown, including but not limited to Title VII of the Civil Rights Act of 1964, as amended; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Genetic Information Nondiscrimination Act of 2008 (GINA); The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan); The Civil Rights Act of 1991; The Immigration Reform and Control Act; The Americans with Disabilities Act of 1990; The Family and Medical Leave Act; The Equal Pay Act; or any allegation for costs, fees,

*Execution Copy* - Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM

4

interest, or other expenses including attorneys' fees incurred in any matter; or any and all claims for bonuses, commissions or any claims for incentive compensation of any type, whether under common law or policy or contract, and any other federal, state or local human rights, civil rights, wage-hour, pension or labor laws, rules and/or regulations, public policy, any and all claims that were asserted or that could have been asserted in the Action, any claim for breach of contract or tort laws, or any claim arising under common law, such as claims for malicious prosecution, misrepresentation, defamation, false imprisonment, libel, slander, invasion of privacy, negligence, claims based on theories of strict liability or *respondeat superior*, infliction of emotional distress, or otherwise, or any other action or grievance against the Releasees based upon any conduct occurring up to and including the date of the Court's Approval Order.  Plaintiff irrevocably waives any right to monetary recovery from the Releasees, whether sought directly by them or in the event any administrative agency or other public authority, individual, or group of individuals should pursue any claim on their behalf. Notwithstanding the previous sentence, this Settlement Agreement does not limit Plaintiff's right to receive an award or payment from a government agency (and not Chesapeake) for information provided to any government agency.

b.      Eligible Class Members shall be deemed to have released and discharged the Releasees from the Released Claims.

c.      Notwithstanding any other provision of this Settlement Agreement, this release does not (i) waive or release any claim for breach or enforcement of this Settlement Agreement; (ii) waive or release any right or claim that may not be waived or released by applicable law; or (iii) prevent an Eligible Class Member from pursuing any administrative claim for unemployment compensation or workers' compensation benefits.  Nothing in this Settlement Agreement precludes an Eligible Class Member from (i) reporting to, responding to an inquiry from, filing a charge or complaint with, communicating with or providing information to, contacting, or cooperating with an investigation conducted by, the Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission, or any other federal, state, or local governmental agency, commission, or regulatory body; (ii) providing information about this Settlement Agreement to his/her family members, attorney, or accountant or tax advisor (if any); (iii) making disclosures or giving truthful testimony as required by law or valid legal process (such as by a subpoena or administrative order); or (iv) engaging in any concerted or other legally-protected activities.

## CERTIFICATION, NOTICE, AND SETTLEMENT IMPLEMENTATION

11.      The Parties agree to the following procedures for obtaining approval of the Settlement Agreement, certifying the Settlement Class for the purpose of settlement only, and notifying the Settlement Class of this settlement:

a.      **Request for Class Certification and Approval Order**.  Within 10 calendar days of execution of this Settlement Agreement, Plaintiff shall file a Motion for Approval of Settlement Agreement, requesting that the Court approve the Settlement Agreement, certify the Settlement Class pursuant to 29 U.S.C. § 216(b) for settlement purposes only and approve the Notice form attached hereto as Exhibit A.

*Execution Copy* - Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM

5

b. **Notice**. The Settlement Administrator shall be responsible for preparing, printing and mailing the Notice of Settlement and Settlement Award Checks to all Settlement Class Members.

c. No later than 20 business days following the Approval Order, Chesapeake and Class Counsel shall provide the Settlement Administrator with the names, last known addresses, last four digits of the social security number, and email addresses, to the extent Chesapeake is reasonably able to obtain such information, and proposed damages of Settlement Class Members (hereinafter, the "Class List"). To the extent such information is not reasonably available within Chesapeake's databases, Chesapeake shall not be required to subpoena any such information from any third party to comply with the terms of this paragraph.

d. In order to provide the best notice practicable, the Settlement Administrator, prior to mailing the Notice of Settlement and Settlement Award Check will run the list of Settlement Class Members through the U.S. Postal Service's National Change of Address database ("NCOA"). Class Counsel shall also analyze the Class List to make sure that the contact information is accurate. The Settlement Administrator shall provide Class Counsel and Chesapeake a master Class List which will be used for the issuance of Notice of Settlement prior to the issuance of the Notice Settlement. The master Class List shall include the agreed upon damages for each Settlement Class Member, including the amount of taxes to be withheld from the W-2 portion of the settlement.

e. Within fifteen (15) business days after Chesapeake funds the Qualified Settlement Fund (see section 15 below), the Settlement Administrator shall send copies of the Court-approved Notice of Settlement and pro rata Settlement Award Check to all Settlement Class Members via U.S. first class mail.

f. Any Notice of Settlement and Settlement Award Check returned to the Settlement Administrator with a forwarding address shall be re-mailed by the Settlement Administrator within five (5) business days following receipt of the returned mail. If any Notice of Settlement is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts such as skip traces to search for the correct address within five (5) business days, and shall re-mail the Notice of Settlement to any newly found addresses within five (5) business days of finding the new address(es).

12. **Interim Report by the Settlement Administrator**. Within five (5) business days after the Notice Deadline, the Settlement Administrator shall confirm (i) the total number of Settlement Class Members who were sent the Notice of Settlement and Settlement Award Check; and (ii) the total number of Settlement Class Members who cashed the Settlement Award Check.

13. **Dismissal of the Action.** The Court Approval Order shall incorporate a provision dismissing Plaintiff's claims and the claims of Eligible Class Members with prejudice.

*Execution Copy* - Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM

6

## SETTLEMENT FUNDS AND AWARD CALCULATION

14. **Gross Settlement Amount**.

    a. **Funding.** No later than 20 business days following the Approval Order, , Chesapeake shall wire to the Claims Administrator the Gross Settlement Amount, as well as any employer side federal or state payroll taxes for the W-2 portion of the settlement awards.

    b. **Disbursement by Settlement Administrator**. All disbursements shall be made from an IRS-qualified settlement fund set up by the Settlement Administrator (hereinafter, "Qualified Settlement Fund"). The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the Qualified Settlement Fund.

    c. **Interest**. The interest on the funds deposited by Chesapeake will inure *pro rata* to the Party or persons to whom the underlying funds are ultimately paid out.

    d. **Payroll Taxes.** Chesapeake's share of federal and state payroll taxes shall be determined and paid by the Claims Administrator.

15. **Payments**. Subject to the Court's Approval Order, the following amounts shall be paid by the Settlement Administrator from the Gross Settlement Amount:

    a. **Service Award to Plaintiff Hebert**. Plaintiff Joseph Hebert shall receive $10,000.00 for his efforts in bringing and prosecuting the Action, and in consideration of the general release set forth above in Paragraph 10(a). The Qualified Settlement Fund shall issue an IRS Form 1099 for this payment. Hebert shall be solely and legally responsible for all taxes on this service award. This payment shall be made fifteen (15) business days after Funding.

    b. **Attorneys' Fees and Costs**.

        (i) Class Counsel shall receive attorneys' fees in an amount of $2,821,500.00, which is approximately 33 percent of the Gross Settlement Amount which includes the payment of out-of-pocket costs incurred by Class Counsel which will compensate Class Counsel for all work performed in the Action as of the date of this Settlement Agreement as well as all of the work remaining to be performed, including but not limited to documenting the settlement, securing Court approval of the settlement, making sure that the settlement is fairly administered and implemented, and obtaining final dismissal of the Action.

        (ii) The attorneys' fees and costs paid by Chesapeake pursuant to this Settlement Agreement shall constitute full satisfaction of Chesapeake's obligations to pay amounts to any person, attorney or law firm for attorneys' fees or costs in the Action on behalf of Plaintiff and/or any Eligible Class Member, and shall relieve Chesapeake from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of Plaintiff or any Eligible Class Member.

*Execution Copy* - Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM

7

(iii)    An IRS Form 1099 shall be provided to Class Counsel for the payments made to Class Counsel. Each firm constituting Class Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to that firm.

(iv)    The Settlement Administrator shall pay the Court-awarded costs and attorneys' fees seven (7) days following Funding by Chesapeake as described in Paragraph 14(a).

d.    **Settlement Administration Costs**. Settlement Administration costs are estimated not to exceed $40,000.00 and shall be paid from the Gross Settlement Amount. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs incurred in the administration of the settlement.

e.    **Settlement Awards to Eligible Class Members.** Settlement Awards shall be made to Eligible Class Members as set forth below.

## CALCULATION AND DISTRIBUTION OF SETTLEMENT AWARDS

16.    **Settlement Award Eligibility**. All Eligible Class Members shall be paid a Settlement Award from the Net Settlement Amount. Each Settlement Class Member's pro rata damages are set forth on Exhibit B.

17.    Fifty percent (50%) of each Settlement Award to Eligible Class Members shall be treated as back wages, and accordingly, on each Settlement Award, the Settlement Administrator shall effectuate federal and applicable state income and employment taxes and withholdings as required by law with respect to 50% of each Settlement Award distributed, and the Claims Administrator shall pay Chesapeake's customary share of all required federal and state payroll taxes on such amounts. Withholding shall be at the 25% supplemental wage tax rate. The remaining 50% of each Settlement Award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to federal or state withholdings. Each Eligible Class Member shall be solely and legally responsible to pay all taxes on the non-wage penalties and liquidated damages portion of the Settlement Award.

18.    On the back of each check evidencing the Settlement Award distributed to Eligible Class Members, the following language will appear in the endorsement section:

By endorsing and negotiating this check and accepting payment, (a) I fully accept and agree to opt-in to the Settlement Class of *Joseph Hebert v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-GCS, in the United States District Court for the Southern District of Ohio, Eastern Division, and (b) I agree to be bound by the terms and conditions of the Settlement Agreement entered into and executed by Joseph Hebert, the class representative, on my behalf, including my release of claims contained in that Settlement Agreement. I may review a copy of the Settlement Agreement and I represent that I have done to the extent so desired.

19.    The Settlement Administrator shall provide counsel for the Parties with a final report of all proposed Settlement Awards, no more than five (5) calendar days following the Funding.

*Execution Copy* - Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM

8

20. The Settlement Administrator shall mail all Settlement Awards to Eligible Class Members within fifteen (15) business days of Funding. The Settlement Administrator shall then provide a written certification of such payments to counsel for the Parties within five (5) calendar days of mailing all Settlement Awards to Eligible Class Members.

21. All Settlement Award checks shall remain valid and negotiable for ninety (90) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect. All funds from checks not cashed will revert to the Qualified Settlement Fund. The Settlement Administrator will include with each mailed check a letter stating that the check must be cashed or deposited within 90 days or it will be cancelled and deemed void and of no further effect.

22. **Remaining Monies**. If at the conclusion of the 90-day check void period set forth above there are any monies remaining in the Qualified Settlement Fund, those remaining monies shall be paid to Chesapeake within 15 business days following the check void period

23. **No Claim Based Upon Distributions or Payments in Accordance with this Settlement Agreement**. No person shall have any claim against the Releasees, Hebert, the Settlement Class Members, Class Counsel, Chesapeake's Counsel or the Settlement Administrator based on distributions or payments made in accordance with this Settlement Agreement.

## MISCELLANEOUS

24. **Chesapeake's Legal Fees.** Chesapeake's legal fees and expenses in the Action shall be borne by Chesapeake and its indemnitors.

25. **Nullification of the Settlement Agreement.** Except with regard to Paragraph 13 herein, in the event: (a) the Court does not approve the Settlement Agreement as provided herein; or (b) the Settlement Agreement does not become final for any other reason; this Settlement Agreement shall be null and void and the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Settlement Agreement. If this occurs, the Parties shall proceed in all respects as if the Settlement Agreement had not been executed, and the Parties will equally pay the Settlement Administrator's costs incurred as of the date the Settlement Agreement becomes null and void.

26. **Inadmissibility of Settlement Agreement.** Except for purposes of settling the Action, neither this Settlement Agreement, nor its terms, nor any document, statement, proceeding or conduct related to this Settlement Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

27. **Computation of Time.** For purposes of this Settlement Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by FED. R. CIV. P. 6(a)(6)), such time period shall be continued to the following business day.

*Execution Copy -* Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.,* No. 2:17-CV-00852-SDM

9

28.    **Interim Stay of Proceedings.**  The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement Agreement.

29.    **Tax Indemnification.**  Plaintiff and Eligible Class Members agree to pay any taxes found to be owed from payments made pursuant to this Settlement Agreement and to hold the Releasees harmless from any claims, assessments, demands, penalties and interest found to be owed as a result of any payment made pursuant to this Settlement Agreement. Plaintiff and the Eligible Class Members do not indemnify and hold harmless the Releasees from any claims, assessments, demands, penalties and interest found to be owed for time worked for Chesapeake arising out of payments/compensation made in the ordinary course of business.

30.    **Amendment or Modification.**  This Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

31.    **Entire Settlement Agreement.**  This Settlement Agreement constitutes the entire agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.   All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that they have not relied on any promise, representation or warranty, express or implied, not contained in this Settlement Agreement.

32.    **Authorization to Enter Into Settlement Agreement.**  Counsel for all Parties are expressly authorized by the Parties whom they represent to enter into this Settlement Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Settlement Agreement.  The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Settlement Agreement.

33.    **Binding on Successors and Assigns.**  This Settlement Agreement shall be binding upon, and inure to the benefit of Hebert, Chesapeake, and the Eligible Class Members and their heirs, beneficiaries, executors, administrators, successors, transferees, successors, assigns, or any corporation or any entity with which any party may merge, consolidate or reorganize.

34.    **Counterparts.**  This Settlement Agreement may be executed in one or more counterparts, including by facsimile or email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

35.    **Cooperation and Drafting.**  The Parties have cooperated in the drafting and preparation of this Settlement Agreement; hence the drafting of this Settlement Agreement shall not be construed against any of the Parties.  The Parties agree that the terms and conditions of this Settlement Agreement were negotiated at arms' length and in good faith by the Parties and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

*Execution Copy* - Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM

10

36.     **Jurisdiction of the Court.**  The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel submit to the jurisdiction of the Court for this purpose.

37.     **Confidentiality of Material Provided to Class Counsel.**  All materials provided by Chesapeake to Class Counsel or the Settlement Administrator shall be kept confidential and used only for purposes of administering the settlement. However, this Settlement Agreement itself is not confidential.

IN WITNESS WHEREOF, the Parties and their counsel have executed this Settlement Agreement as follows:

| | | |
|---|---|---|
| **NAMED**<br>**PLAINTIFF:** | <br>Joseph Hebert (Oct 17, 2019)<br>———————————————<br>Joseph Hebert | Oct 17, 2019<br>Date: _____, 2019 |

| | | |
|---|---|---|
| **CLASS**<br>**COUNSEL:** | <br>Michael Josephson (Oct 17, 2019)<br>———————————————<br>Michael A. Josephson | Oct 17, 2019<br>Date: _____, 2019 |

Michael A. Josephson
State Bar No. 24014780
Richard M. Schreiber
State Bar No. 24056278
Josephson Dunlap
11 Greenway Plaza
Suite 3050
Houston, TX 77046

and

Richard J. (Rex) Burch
State Bar No. 24001807
Bruckner Burch PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile

*Execution Copy* - Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et.al.*, No. 2:17-CV-00852-SDM

11

**CHESAPEAKE'S
COUNSEL:**                                                              Date: _10/ 22___, 2019

               David Jordan
               Littler Mendelson, P.C.
               1301 McKinney, Suite 1900
               Houston, Texas 77010


**DEFENDANT:**        _____        Date: _____, 2019

               Chesapeake Operating, Inc.
               Chesapeake Operating, LLC


*Execution Copy* - Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM

12

**CHESAPEAKE'S
COUNSEL:**

_____     Date: _____, 2019
David Jordan
Littler Mendelson, P.C.
1301 McKinney, Suite 1900
Houston, Texas 77010


**DEFENDANT:**

_____     Date: 10/24/19 2019
James R. Webb
Executive Vice President – General
Counsel & Corporate Secretary
Chesapeake Operating, Inc.
Chesapeake Operating, LLC

*Execution Copy* - Settlement Agreement and Release of *Joseph Hebert, individually and on behalf of all others similarly situated v. Chesapeake Operating, Inc. et al.*, No. 2:17-CV-00852-SDM

12

<u>**EXHIBIT A**</u>

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

*Joseph Hebert, et. al. v. Chesapeake Energy, Corp., Inc, et. al.,* Case No. 2:17-cv-852-SDM
United States District Court, Southern District of Ohio, Eastern Division

---

**IMPORTANT NOTICE REGARDING UNPAID OVERTIME SETTLEMENT WITH CHESAPEAKE OPERATING, INC. AND CHESAPEAKE OPERATING, LLC.**

---

**To:** «First_Name» «Last_Name»

**Re:** **Your Right to Overtime Pay from a Settlement with Chesapeake Operating, Inc. and Chesapeake Operating, LLC**

**THE AMOUNT OF THE ENCLOSED SETTLEMENT AWARD: $_____**

<u>**WHY AM I GETTING THIS NOTICE?**</u>

You are getting this notice and check because a lawsuit against Chesapeake Operating, Inc. and Chesapeake Operating, LLC (collectively, "Chesapeake") settled for $8,550,000.00. The lawsuit alleged that Plaintiff and certain drilling and completions independent contractor consultants regularly worked overtime and were only paid a day rate. Plaintiff argued that even though he was called an independent contractor and paid a 1099 form, his relationship with Chesapeake was that of an employer-employee relationship. Plaintiff argued that because he acted like an employee of Chesapeake, he was entitled to unpaid overtime compensation.

Chesapeake has denied, and continues to deny, these allegations.

**THIS NOTICE IS TO INFORM YOU THAT YOU ARE ENTITLED TO RECEIVE MONEY FROM A SETTLEMENT IN THIS CASE, AS DESCRIBED BELOW, IN THE SUM OF [SETTLEMENT SHARE]. YOU ARE NOT REQUIRED TO DO ANYTHING TO RECEIVE YOUR SHARE OF THE SETTLEMENT OTHER THAN ENDORSING AND DEPOSITING THE SETTLEMENT CHECK, AND AGREEING TO THE TERMS SET FORTH ON THE BACK OF THE CHECK, AS DESCRIBED BELOW. THE SETTLEMENT CHECK IS ENCLOSED WITH THIS NOTICE.**

## YOUR SHARE OF THE SETTLEMENT.

Your settlement payment was based on your work history with Chesapeake and the contractor through which you performed services for Chesapeake, including the number of weeks you worked in the relevant period.

Your settlement payment is: $«AMOUNT». The settlement payment was calculated by multiplying the number of overtime weeks you worked between [***** and *****] by a per workweek share, based on the total settlement fund available to the class, divided by the aggregate number of overtime weeks worked by everyone in the class.  You have 90 days to endorse and deposit this check.

## WHAT HAPPENS IF I CASH MY CHECK?

In exchange for endorsing and agreeing to the language on the back of your check, cashing your check and obtaining your Settlement Award, you have agreed to join the unpaid overtime lawsuit against Chesapeake and to the following release of claims:

> **In consideration for the payment of my settlement share, I am releasing any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees (as defined below) for alleged unpaid wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or any other compensation and relief arising under the Fair Labor Standards Act or any other state or local wage-related law applicable to the time that I performed services for or on behalf of Chesapeake.**

"Releasees" means Chesapeake, and their respective past, present and future parent companies, subsidiaries, affiliates, agents, employees, owners, members, officers, directors, partners, benefit plans, co-employers, joint employers, indemnitors, indemnitees, payrolling companies, contractors, vendors, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers, except that the release of any third-party vendor or contractor that supplied or staffed you to Chesapeake shall be conditioned upon Chesapeake providing written notice to Class Counsel (as defined herein) that the vendor has met Chesapeake's requirements to be included as a Released Party, regardless of whether such notice was made before, or after your decision to opt-in to this class and accept the settlement proceeds.  You can get information on whether they are a Released Party by contacting Class Counsel.

You will be acknowledging that you are represented by Josephson Dunlap, LLP and Bruckner Burch PLLC (collectively "Class Counsel") and that you will be bound by the judgment issued by Judge Morrison on _____, 2019.

Half of your check represents wages, which is subject to federal and state tax withholding, for which you will receive a W-2 at year end.  The other half of your check represents liquidated damages and for which you will receive a 1099 at year-end. Please speak with your tax advisor for advice on the tax treatment of these payments.

Chesapeake has agreed to pay Class Counsel's attorney fees and costs, which equate to 33 percent of

the settlement. You will not have to pay Class Counsel any money for their attorneys' fees or costs directly. This amount is being paid to Class Counsel as a part of the settlement approved by the Court.

## WHAT HAPPENS IF I DO NOT CASH MY CHECK?

If you do not cash the check, you will not be affected by any judgment or settlement in this case. You will not be entitled any compensation from Chesapeake or the Released Parties connected to this case. You will be free to file your own lawsuit, or to not file any lawsuit at all; however, the pendency of this action will not stop the running of the statute of limitations as to any claims you may have until you file your own lawsuit.

## WHAT DOES THE COURT THINK?

While the Court approved this settlement, the Court did not determine Chesapeake (or anyone else) did anything wrong. The Court did not determine you are owed any money. Instead, this is a settlement payment which the Court approved as fair and reasonable in light of the claims and defenses asserted.

## WHAT DOES CHESAPEAKE THINK?

Chesapeake believes this settlement is a business solution to this dispute. Chesapeake will not tolerate any retaliation against you for accepting, or not accepting, this settlement. Chesapeake believes that the decision to participate in solely up to you.

## WHAT IF I HAVE OTHER QUESTIONS?

This notice is only a summary. If you have additional questions, please call Class Counsel at **713-352-1100 or the Settlement Administrator at _____.** The 90-day deadline to cash your check will not be extended under any circumstances.

If you have questions, please call or email Michael Josephson or Richard Schreiber at Josephson Dunlap LLP, 11 Greenway Plaza, Suite 3050, Houston Texas 77046 (713) 352-1100 or info@mybackwages.com.

You may also inspect the file pertaining to this lawsuit. This information may be found in the Clerk's Office located at Joseph P. Kinneary U.S. Courthouse, Room 167, 85 Marconi Boulevard in Columbus, Ohio.

**Please do not contact the Court regarding this settlement. The Court must remain neutral in this matter and cannot offer you advice.**

**Exhibit B**

| ELIGIBLE CLASS MEMBER | PRO RATA SHARE |
|---|---|
| AARON MCALEXANDER | $3,673.29 |
| AARON SISTRUNK | $28,570.04 |
| AARON VANCE | $1,632.57 |
| ADAM DAVIS | $1,632.57 |
| ADAM DEEN | $6,938.44 |
| ADAM HOFFMAN | $2,448.86 |
| ADAM RUSSELL | $21,223.46 |
| ADRIAN DEARMAN | $26,121.18 |
| ALEX CROSS | $16,325.74 |
| ALLAN POOLE | $3,265.15 |
| ALLEN MERCER | $7,754.73 |
| ALLEN ZINKE | $25,713.04 |
| ANDREW ANDERSON | $3,265.15 |
| ANDY NANCE | $33,467.76 |
| ANTHON SPEARMAN | $31,018.90 |
| ART HERNANDEZ | $36,324.77 |
| ART MORRIS | $2,857.00 |
| ASHELY ADCOCK | $6,122.15 |
| AUGUSTUS MOORE | $14,693.16 |
| B BAKER | $408.14 |
| BARRY LIRETTE | $1,632.57 |
| BARRY WHITAKER | $4,489.58 |
| BART STRINGHAM | $19,999.03 |
| BENNY BURSE | $10,611.73 |
| BILL GILBERT | $3,673.29 |
| BILL HOWELL | $21,631.60 |
| BILL RUBIN | $6,938.44 |
| BILLY DEAR | $24,080.46 |
| BLAKE RILEY | $47,752.79 |
| BLAS CASTELLANOS | $28,161.90 |
| BOBBY BEARDSLEY | $26,937.47 |
| BRAD DODSON | $20,407.17 |
| BRAD HENSON | $816.29 |
| BRADLEY MURDOCK | $5,714.01 |
| BRADLEY PHILLIPS | $2,448.86 |
| BRANDON COBB | $6,530.30 |
| BRANDON COLEMAN | $13,876.88 |
| BRANDON CONSTANTINE | $40,814.35 |
| BRANDON DECKER | $40,814.35 |
| BRANDON MCAFEE | $55,915.65 |

| | |
|---|---|
| BRANON DOMINGUE | $1,632.57 |
| BRETT FARNSWORTH | $31,427.05 |
| BRIAN BAKER | $3,265.15 |
| BRIAN HEFFRON | $15,101.31 |
| BRIAN LANDRUM | $11,836.16 |
| BRIAN WALLACE | $42,855.06 |
| BRONSON BASCO | $2,448.86 |
| BRUCE GREER | $11,836.16 |
| BRYAN HEBERT | $42,038.78 |
| BRYAN LUCCOUS | $9,795.44 |
| BRYAN TRAHAN | $9,795.44 |
| BRYSON BAKER | $408.14 |
| BUBBA SIMONS | $3,673.29 |
| BUCK ASHMORE | $7,346.58 |
| BUDDY ALLEN | $22,856.03 |
| BYRON HENSON | $7,346.58 |
| CALEB TARBET | $816.29 |
| CARL MARQUARDT | $38,365.49 |
| CASEY MEYERS | $16,325.74 |
| CASEY STARKS | $29,794.47 |
| CASSIDY BLANCHARD | $13,060.59 |
| CHAD FRANATOVICH | $6,938.44 |
| CHANCE DOYAL | $28,978.19 |
| CHARLES COLLINS | $4,489.58 |
| CHARLES COX | $8,162.87 |
| CHARLES TOUCHET | $29,794.47 |
| CHARLIE BEHRENS | $14,693.16 |
| CHARLIE BROWN | $36,732.91 |
| CHASE HOWELL | $31,018.90 |
| CHRIS BARTON | $2,857.00 |
| CHRIS BERRY | $10,611.73 |
| CHRIS BRELAND | $6,530.30 |
| CHRIS CHAMBLEE | $2,448.86 |
| CHRIS DEAN | $4,081.43 |
| CHRIS FORREST | $8,571.01 |
| CHRIS MAHAFFEY | $19,999.03 |
| CHRIS MCCOLLUM | $10,203.59 |
| CHRIS SCHMALZ | $27,753.76 |
| CHRIS VACCA | $2,857.00 |
| CHRISTOPER THOMAS | $12,652.45 |
| CHRISTOPHER BERRY | $16,325.74 |
| CHRISTOPHER RICHARDSON | $21,223.46 |
| CHUCK PADDICK | $13,876.88 |
| CLAY WESTERFIELD | $22,447.89 |

| | |
|---|---|
| CLAYTON E HENSON | $8,979.16 |
| CLEMENT WOHLEB | $15,917.60 |
| CLIFFORD HOOTER | $24,080.46 |
| CODY BLANTON | $25,713.04 |
| CODY LIGGETT | $10,611.73 |
| COEN | $408.14 |
| CONSTANTINE VOUROS | $10,203.59 |
| CORY HOWELL | $10,611.73 |
| CRAIG BALLARD | $16,325.74 |
| CRAIG COEN | $3,265.15 |
| CRIAG COEN | $13,468.73 |
| DALE GARVIN | $5,305.87 |
| DALE STUCKS (Kenneth) | $5,305.87 |
| DAMION BLACK | $11,019.87 |
| DAMION SAVAGE | $42,855.06 |
| DANIEL BRYANT | $1,632.57 |
| DANIEL BURKARD | $15,917.60 |
| DANNY LAMBERT | $26,529.33 |
| DANNY PRICE | $28,161.90 |
| DANNY SHARPE | $28,161.90 |
| DARREN HILL | $33,059.62 |
| DAVE COLE | $13,876.88 |
| DAVE SMITH | $9,387.30 |
| DAVID CASE | $15,101.31 |
| DAVID GDANSKI | $6,530.30 |
| DAVID KNOTTS | $4,897.72 |
| DAVID NEWMAN | $11,836.16 |
| DAVID NEWSOME | $10,203.59 |
| DAVID REECE | $20,815.32 |
| DAVID RICHEAUX | $27,753.76 |
| DAVID SMITH | $6,530.30 |
| DAVID ZAEHRINGER | $9,387.30 |
| DAX THOMPSON | $9,795.44 |
| DEAN DAVIS | $26,937.47 |
| DEISMOND BUFFORD | $24,488.61 |
| DELF MARTINEZ | $2,448.86 |
| DENNIS HUCHINSON | $5,714.01 |
| DENNIS LOHSE | $1,224.43 |
| DENNIS SAUNDERS | $31,018.90 |
| DENSIEL BOTTGER | $11,019.87 |
| DLATON ASHMORE | $15,509.45 |
| DON BOATWRIGHT | $6,938.44 |
| DONALD BRANDON | $39,181.77 |
| DONALD HUNTER | $13,876.88 |

| | |
|---|---|
| DONNIE HUNTER | $33,875.91 |
| DOUG CARRUTH | $16,325.74 |
| DOUGLAS ARMSTRONG | $18,774.60 |
| DOUGLAS STEWART | $6,938.44 |
| DREW MILLER | $17,958.31 |
| DUSTIN HILL | $22,856.03 |
| DUSTIN SANDERS | $8,162.87 |
| DUSTY OWENS | $816.29 |
| DWAYNE PASTRANO | $22,447.89 |
| EDWIN GARVIN | $1,632.57 |
| ELMER ARDESE | $3,265.15 |
| ERIC DOLPH | $11,836.16 |
| ERIC GRAHAM | $2,040.72 |
| ERIC GUZMAN | $17,142.03 |
| ERIC LEWIS | $5,305.87 |
| ERNEST JOHNSTON | $10,203.59 |
| EVAN THOMAS | $16,733.88 |
| FLETCHER BRAND | $14,693.16 |
| FREEMAN CRAWFORD | $13,876.88 |
| GARY BLANTON | $34,284.05 |
| GARY MARTIN | $1,632.57 |
| GARY MCKEE | $1,632.57 |
| GARY RUSSELL | $15,917.60 |
| GERALD GREEN | $19,999.03 |
| GIBSON COLVIN | $24,896.75 |
| GLEN BENTLEY | $816.29 |
| GLEN MCVAY | $816.29 |
| GLEN PEPPERS | $25,713.04 |
| GLEN WOLFORD | $12,652.45 |
| GLENN MERICLE | $29,794.47 |
| GORGONIO GARCIA | $2,448.86 |
| GREG BLACK | $19,999.03 |
| GREG TIZMAN | $2,448.86 |
| HARRIS LAFLEUR | $2,040.72 |
| HAYDAN STONE | $10,611.73 |
| JACK GOODMAN | $2,857.00 |
| JACK MORRIS | $1,224.43 |
| JACKIE HOLIK | $30,202.62 |
| JACOB PEIFFLEY | $15,509.45 |
| JAKE RAY | $14,693.16 |
| JAKE ROCHELLE | $1,632.57 |
| JAMES ALEXANDER | $4,081.43 |
| JAMES DICKSON | $4,081.43 |
| JAMES DOBRA | $1,224.43 |

| | |
|---|---|
| JAMES MCGOWEN | $34,284.05 |
| JAMES RICHARDSON | $3,673.29 |
| JAMES WESLEY | $1,224.43 |
| JAMES WOODS | $14,693.16 |
| JAMES YERBY | $28,570.04 |
| JARED HANSEN | $11,019.87 |
| JARED WILLIAMS | $26,937.47 |
| JARRED ELLIOTT | $16,733.88 |
| JARROD RUBENZER | $45,303.92 |
| JASON BUENTELLO | $33,467.76 |
| JASON COLLINSWORTH | $10,611.73 |
| JASON DARNELL | $19,182.74 |
| JASON DOWDY | $15,917.60 |
| JASON MARTIN | $11,428.02 |
| JASON RUSSELL | $11,428.02 |
| JEFFERY SPEAR | $8,571.01 |
| JEREMIAH SWEARSON | $18,774.60 |
| JEREMY BACON | $12,652.45 |
| JERIMIAH SUMMERS | $8,979.16 |
| JEROME BOURGUIOS | $408.14 |
| JESSE WOLF | $20,815.32 |
| JIM BAKER | $28,161.90 |
| JIM OARR | $1,224.43 |
| JIMMY COLLINS | $32,651.48 |
| JIMMY FREEMAN | $408.14 |
| JIMMY SHARP | $11,019.87 |
| JODY BRITT | $25,304.89 |
| JOE FOERSTE | $9,795.44 |
| JOE GATES | $27,753.76 |
| JOE WRIGHT | $9,387.30 |
| JOEY BLAKELY | $7,346.58 |
| JOHN AMADOR | $1,632.57 |
| JOHN FINLEY | $3,673.29 |
| JOHN HOLMES | $19,182.74 |
| JOHN HOSIER | $11,019.87 |
| JOHN ORTIZ | $8,162.87 |
| JOHN SNOOK | $11,428.02 |
| JOHN THOMAS | $29,794.47 |
| JOHN THOUMA | $15,509.45 |
| JOHN YORK | $2,857.00 |
| JON HEBERT | $32,243.33 |
| JONATHAN JOHNSON | $14,285.02 |
| JONATHAN LAWLEY | $22,447.89 |
| JOSEPH HEBERT | $7,346.58 |

| | |
|---|---|
| JOSEPH MORRIS | $30,202.62 |
| JOSEPH NORMAN | $2,448.86 |
| JOSH BLACKWELL | $5,305.87 |
| JOSH JAMES | $14,693.16 |
| JOSH LUMBARDO | $1,632.57 |
| JOSH MCCELVY | $408.14 |
| JOSH MCTHENY | $3,265.15 |
| JOSHUA ABNEY | $14,285.02 |
| JOSHUA DEVILLE | $10,611.73 |
| JOSHUA HASTINGS | $20,815.32 |
| JOSHUA LUMBARDO | $24,488.61 |
| JOSHUA WILLIAMS | $3,673.29 |
| JT | $408.14 |
| JUDE ALARIO | $17,958.31 |
| JUSTIN ALLRED | $34,692.19 |
| JUSTIN BOOP | $16,733.88 |
| JUSTIN LANGFORD | $16,325.74 |
| JUSTIN MITCHELL | $27,345.61 |
| KARL SMITH | $26,121.18 |
| KEITH MCKELVY | $19,590.89 |
| KELLY BOUDREAUX | $54,283.08 |
| KENNETH COLGROVE | $1,632.57 |
| KENNETH CUMMINGS | $6,530.30 |
| KENNETH HOWELL | $4,897.72 |
| KENNY ADAMS | $11,428.02 |
| KEVIN BARCHEERS | $13,468.73 |
| KEVIN CHANEY | $11,019.87 |
| KEVIN COLONY | $22,447.89 |
| KEVIN COOPER | $28,978.19 |
| KEVIN MCBEE | $12,652.45 |
| KEVIN MURPHY | $13,468.73 |
| KEVIN ROTHLISBERGER | $15,917.60 |
| KEVIN SLATER | $9,795.44 |
| KEVIN TURNER | $8,571.01 |
| KIRK JUDICE | $39,998.06 |
| KRIS GONZALAS | $27,753.76 |
| KRISTOPHER GONZALES | $11,836.16 |
| KYLE ADAMEK | $6,122.15 |
| KYLE HOGUE | $7,754.73 |
| KYLE JAMES | $10,611.73 |
| LANCE JAMES | $1,632.57 |
| LARRY STRONG | $4,489.58 |
| LARRY WILLIAMSON | $11,428.02 |
| LEE BERRY | $6,122.15 |

| | |
|---|---:|
| LEONARD BOECKMAN | $8,162.87 |
| LESLIE HOWELL | $7,754.73 |
| LEVI GAGE | $19,590.89 |
| LIONEL VELA | $2,040.72 |
| LOWELL BAUCUM | $9,387.30 |
| LUCIANO RUBALCAVA | $1,632.57 |
| LYNN WISE | $10,611.73 |
| MACKEY LAMBERT | $10,203.59 |
| MARCUS DAVIS | $35,100.34 |
| MARK DUNCAN | $31,018.90 |
| MARK RICHARDSON | $6,122.15 |
| MARK THIBODEAUX | $9,795.44 |
| MARLO ROSS | $408.14 |
| MATHEW BELSOM | $32,651.48 |
| MATT SOLIE | $15,101.31 |
| MATT TARBET | $14,285.02 |
| MATT WHITEHEAD | $6,938.44 |
| MATT WOOD | $29,794.47 |
| MATTHEW DAVIS | $16,733.88 |
| MATTHEW DECHER | $34,692.19 |
| MATTHEW SAUNDERS | $9,387.30 |
| MATTHEW SIMMONS | $29,386.33 |
| MICHAEL BREWER | $10,203.59 |
| MICHAEL HUBBARD | $12,652.45 |
| MICHAEL MOGERMAN | $2,857.00 |
| MICHAEL RAWSON | $1,632.57 |
| MICHAEL SMITH | $6,530.30 |
| MICHAEL VANSTON | $2,857.00 |
| MIICHAEL CHAMPAGNE | $19,590.89 |
| MIKE HARTSFIELD | $4,489.58 |
| MIKE HUBBARD | $5,305.87 |
| MIKE INMAN | $8,162.87 |
| MIKE O'SHAUGHNESSY | $3,265.15 |
| MIKE TEAFF | $13,060.59 |
| NATHAN CALDWELL | $408.14 |
| NATHAN PENNEY | $2,448.86 |
| NEIL BROWN | $408.14 |
| NICK IGNATIEV | $5,714.01 |
| NOLLIE INGRAM | $4,081.43 |
| OMAR OLIVAREZ | $2,040.72 |
| OZE PRUITT | $816.29 |
| PAT SULLIVAN | $4,081.43 |
| PATRICK BICKFORD | $38,365.49 |
| PATRICK BOUDREAUX | $39,998.06 |

| | |
|---|---|
| PATRICK MCCOY | $26,529.33 |
| PATTRICK BENNETT | $2,040.72 |
| PAUL STELPFLUG | $32,651.48 |
| PERRY DUCOTE | $29,386.33 |
| PHILLIP LEWIS | $8,571.01 |
| RANDELL GILLASPY | $7,754.73 |
| RANDY MOELLER | $19,999.03 |
| RANDY SPEARS | $6,938.44 |
| RANDY WOODS | $9,795.44 |
| RAYMOND ANDERSON | $22,856.03 |
| RENE PEREZ | $11,428.02 |
| RENE PEREZ SR | $9,795.44 |
| REYMUNDO GONZALEZ | $7,346.58 |
| RICHARD ALLEN | $3,673.29 |
| RICHARD CLODFELTER | $3,673.29 |
| RICHARD LEECH | $15,101.31 |
| RICHARD WILSON | $11,019.87 |
| RICOO ROCCABRUNA | $816.29 |
| ROBERT BRIONES | $31,018.90 |
| ROBERT DAVIS | $1,224.43 |
| ROBERT EAMES | $12,652.45 |
| ROBERT EARNES | $11,836.16 |
| ROBERT HEPPNER | $25,713.04 |
| RODNEY BEAN | $2,857.00 |
| ROGER LAWRENCE | $47,344.64 |
| ROLAND RENNER | $11,019.87 |
| ROLANDO GONZALES | $1,632.57 |
| RONALD SAUNDERS | $10,611.73 |
| RONNIE HAGOOD | $12,244.30 |
| RONNIE MYERS | $16,325.74 |
| RONNIE SAUNDERS | $3,673.29 |
| RUDY GONSALEZ | $7,754.73 |
| RUDY LOPEZ JR | $13,468.73 |
| RUDY SMITH | $33,467.76 |
| RYAN BOGGS | $6,938.44 |
| RYAN EAST | $2,040.72 |
| SAM ORTIZ | $2,040.72 |
| SAMMY GONZALEZ | $2,040.72 |
| SAMUEL SEARLE | $3,265.15 |
| SCOTT RHODES | $6,938.44 |
| SCOTT TAYLOR | $20,407.17 |
| SEAN STUTZMAN | $19,999.03 |
| SHANE ATES | $4,081.43 |
| SHANON WARS | $32,651.48 |

| | |
|---|---|
| SPENCER FINNERTY | $26,937.47 |
| STEVE BYRD | $3,673.29 |
| STEVE LOPEZ | $37,549.20 |
| STUART SCHWARTZ | $1,224.43 |
| TANNER WINTER | $7,754.73 |
| TEL BAIRD | $13,876.88 |
| TERRY HICKMAN | $25,304.89 |
| TERRY HIGGINS | $27,753.76 |
| TERRY HOOPER | $19,182.74 |
| TERRY KIMBLE | $1,224.43 |
| TERRY PLACE | $28,570.04 |
| TERRY THIEL | $9,795.44 |
| TERRY WILLIAMS | $408.14 |
| THOMAS MORRIS | $4,081.43 |
| THOMAS MURRY | $1,224.43 |
| TIM CANTRELL | $11,428.02 |
| TIM DENNING | $9,387.30 |
| TIM FIELDS | $13,468.73 |
| TIM LONG | $33,059.62 |
| TIM THOMAS | $8,571.01 |
| TODD HOLLOWAY | $1,632.57 |
| TOMMY (BUBBA) VELASQUEZ | $2,040.72 |
| TOMMY PACE | $11,428.02 |
| TONY KUMAGAH | $11,836.16 |
| TONY LOPEZ | $15,101.31 |
| TRAVIS CRAIG | $2,040.72 |
| TRAVIS GUIDRY | $1,224.43 |
| TREVOR KLING | $816.29 |
| TREY COLGROVE | $8,979.16 |
| TREY LUCCOUS | $8,571.01 |
| TROY JONES | $4,081.43 |
| TY GRAHAM | $2,857.00 |
| TYLER BASCO | $1,632.57 |
| TYSON PARKER | $8,979.16 |
| VANNY BLANCHARD | $21,631.60 |
| VICTOR GUTIERREZ | $36,732.91 |
| WADE 'DUKE' LANDRY | $7,346.58 |
| WADE GRAY | $11,836.16 |
| WALLACE BOSSERT | $34,692.19 |
| WALTER LOWRY | $3,265.15 |
| WALTER MOORE | $10,611.73 |
| WALTER SCOTT | $408.14 |
| WARREN HALE | $4,081.43 |
| WAYNE AIMSWORTH | $7,346.58 |

| | |
|---|---|
| WES NIX | $11,019.87 |
| WESLEY WAYCASTER | $10,611.73 |
| WESTON PRUITT | $4,897.72 |
| WILBUR BROWN | $11,428.02 |
| WILL HANNA | $30,610.76 |
| WILLIAM ASHMORE | $11,836.16 |
| WILLIAM DOBY | $42,855.06 |
| WILLIAM HOWELL | $13,468.73 |
| WILLIAM LAROUX | $26,529.33 |
| WILLIAM PINNICK | $34,284.05 |
| WILLIAM WHALEY | $6,530.30 |
| YADIR LOZANO | $37,141.06 |